# CARELLA v. CALIFORNIA

APPEAL FROM THE APPELLATE DEPARTMENT, SUPERIOR
COURT OF CALIFORNIA, LOS ANGELES COUNTY

No. 87–6997.   Argued April 26, 1989—Decided June 15, 1989

*Christopher D. Cerf*, by appointment of the Court, 488
U. S. 992, argued the cause *pro hac vice* and filed briefs for
appellant.

*Arnold T. Guminski* argued the cause for appellee.   With
him on the brief were *Ira Reiner* and *Harry B. Sondheim.\**

PER CURIAM.

On March 24, 1986, after a jury trial in the Municipal Court
of Beverly Hills Judicial District, California, appellant Eu-

---

\**William T. Stephens* filed a brief for the American Rental Association
as *amicus curiae* urging affirmance.

gene Carella was convicted of grand theft for failure to return a rented car.[1] At his trial, the court adopted the prosecution's requested instructions applying the statutory presumptions in Cal. Veh. Code Ann. § 10855 (West 1987)[2] and Cal. Penal Code Ann. § 484(b) (West 1988).[3] Specifically, over Carella's objection, the court charged the jury as follows:

(1) "Presumption Respecting Theft by Fraud:

"Intent to commit theft by fraud is presumed if one who has leased or rented the personal property of another pursuant to a written contract fails to return the personal property to its owner within 20 days after the owner has made written demand by certified or registered mail following the expiration of the lease or rental agreement for return of the property so leased or rented."

(2) "Presumption Respecting Embezzlement of a Leased or Rented Vehicle:

"Whenever any person who has leased or rented a vehicle wilfully and intentionally fails to return the vehicle to its owner within five days after the lease or rental agreement has expired, that person shall be presumed to have embezzled the vehicle." App. 15.

---

[1] Carella was acquitted of the charged violation of Cal. Veh. Code Ann. § 10851(a) (West 1987), which provides that the nonconsensual taking or driving of a vehicle is a "public offense" if accomplished with the specific "intent either to permanently or temporarily" deprive the owner of title or possession.

[2] California Veh. Code Ann. § 10855 reads: "Whenever any person who has leased or rented a vehicle wilfully and intentionally fails to return the vehicle to its owner within five days after the lease or rental agreement has expired, that person shall be presumed to have embezzled the vehicle."

[3] California Penal Code Ann. § 484(b) reads: "Except as provided in Section 10855 of the Vehicle Code, intent to commit theft by fraud is presumed if one who has leased or rented the personal property of another pursuant to a written contract fails to return the personal property to its owner within 20 days after the owner has made written demand by certified or registered mail following the expiration of the lease or rental agreement for return of the property so leased or rented."

On appeal to the Appellate Department of the Superior Court, the prosecution confessed error, acknowledging that these two instructions unconstitutionally imposed conclusive presumptions as to core elements of Carella's crime. The Appellate Department disagreed, however, and validated the presumptions on the ground that Carella "never offered testimony concerning the nonexistence of the presumed facts. . . ." *Id.*, at 61. This disposition was so plainly at odds with prior decisions of this Court that we noted probable jurisdiction, 488 U. S. 964 (1988), and now reverse.

The Due Process Clause of the Fourteenth Amendment denies States the power to deprive the accused of liberty unless the prosecution proves beyond a reasonable doubt every element of the charged offense. *In re Winship*, 397 U. S. 358, 364 (1970). Jury instructions relieving States of this burden violate a defendant's due process rights. See *Francis* v. *Franklin*, 471 U. S. 307 (1985); *Sandstrom* v. *Montana*, 442 U. S. 510 (1979). Such directions subvert the presumption of innocence accorded to accused persons and also invade the truth-finding task assigned solely to juries in criminal cases.

We explained in *Francis* and *Sandstrom* that courts should ask whether the presumption in question is mandatory, that is, whether the specific instruction, both alone and in the context of the overall charge, could have been understood by reasonable jurors to require them to find the presumed fact if the State proves certain predicate facts. See *Sandstrom, supra*, at 514. The prosecution understandably does not now dispute that the instructions in this case were phrased as commands, for those instructions were explicit and unqualified to that effect and were not explained elsewhere in the jury charge to be merely permissive. Carella's jury was told first that a person "shall be presumed to have embezzled" a vehicle if it is not returned within 5 days of the expiration of the rental agreement; and second, that "intent to commit theft by fraud is presumed" from failure to return rented property within 20 days of demand.

These mandatory directions directly foreclosed independent jury consideration of whether the facts proved established certain elements of the offenses with which Carella was charged. The instructions also relieved the State of its burden of proof articulated in *Winship*, namely, proving by evidence every essential element of Carella's crime beyond a reasonable doubt. The two instructions violated the Fourteenth Amendment.

The State insists that the error was in any event harmless. As we have in similar cases, we do not decide that issue here. In *Sandstrom* v. *Montana, supra*, at 515, the jury in a murder case was instructed that the "law presumes that a person intends the ordinary consequences of his voluntary acts." We held that, because the jury might have understood the presumption to be conclusive or as shifting the burden of persuasion, the instruction was constitutional error. There was a claim of harmless error, however, and even though the jury might have considered the presumption to be conclusive, we remanded for the state court to consider the issue if it so chose.

In *Rose* v. *Clark*, 478 U. S. 570 (1986), we again said that a *Sandstrom* error is subject to the harmless-error rule. "Nor is *Sandstrom* error equivalent to a directed verdict for the State. When a jury is instructed to presume malice from predicate facts, it still must find the existence of those facts beyond a reasonable doubt. *Connecticut* v. *Johnson*, 460 U. S. 73, 96–97 (1983) (POWELL, J., dissenting). In many cases, the predicate facts conclusively establish intent, so that no rational jury could find that the defendant committed the relevant criminal act but did not *intend* to cause injury. . . . In that event the erroneous instruction is simply superfluous: the jury has found, in *Winship*'s words, 'every fact necessary' to establish every element of the offense beyond a reasonable doubt." *Rose, supra*, at 580–581 (footnote and citations omitted). We also observed that although we have the authority to make the harmless-error determination

ourselves, we do not ordinarily do so. Hence, we remanded the case for the lower court to make that determination in the first instance.

We follow the same course here and reverse the judgment of the California court without deciding here whether no rational jury could find the predicate acts but fail to find the fact presumed. 478 U. S., at 580–581. Accordingly, the judgment of the Appellate Department is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

*It is so ordered.*

JUSTICE SCALIA, with whom JUSTICE BRENNAN, JUSTICE MARSHALL, and JUSTICE BLACKMUN join, concurring in the judgment.

I agree with the Court that the decision below must be reversed, and that it is sensible to permit the state court to conduct harmless-error analysis in the first instance. I write separately, however, because the Court has only implicitly acknowledged (by quoting the passage that it does from *Rose* v. *Clark*, 478 U. S. 570, 580–581 (1986), see *ante*, at 266) what should be made explicit — that the harmless-error analysis applicable in assessing a mandatory conclusive presumption is wholly unlike the typical form of such analysis. In the usual case the harmlessness determination requires consideration of "the trial record as a whole," *United States* v. *Hasting*, 461 U. S. 499, 509 (1983), in order to decide whether the fact supported by improperly admitted evidence was in any event overwhelmingly established by other evidence, see, *e. g.*, *Milton* v. *Wainwright*, 407 U. S. 371, 372–373 (1972); *Harrington* v. *California*, 395 U. S. 250, 254 (1969). Such an expansive inquiry would be error here, and I think it important both to explain why and to describe the mode of analysis that is appropriate. The Court's mere citation of *Rose* is inadequate to those ends, since, for reasons I shall describe, *infra*, at 271–272, that case itself is ambiguous.

The Court has disapproved the use of mandatory conclusive presumptions not merely because it "'conflict[s] with the overriding presumption of innocence with which the law endows the accused,'" *Sandstrom* v. *Montana*, 442 U. S. 510, 523 (1979) (quoting *Morissette* v. *United States*, 342 U. S. 246, 275 (1952)), but also because it "'invade[s] [the] fact-finding function' which in a criminal case the law assigns solely to the jury," 442 U. S., at 523 (quoting *United States* v. *United States Gypsum Co.*, 438 U. S. 422, 446 (1978)). The constitutional right to a jury trial embodies "a profound judgment about the way in which law should be enforced and justice administered." *Duncan* v. *Louisiana*, 391 U. S. 145, 155 (1968). It is a structural guarantee that "reflect[s] a fundamental decision about the exercise of official power—a reluctance to entrust plenary powers over the life and liberty of the citizen to one judge or to a group of judges." *Id.*, at 156. A defendant may assuredly insist upon observance of this guarantee even when the evidence against him is so overwhelming as to establish guilt beyond a reasonable doubt. That is why the Court has found it constitutionally impermissible for a judge to direct a verdict for the State. See *United States* v. *Martin Linen Supply Co.*, 430 U. S. 564, 572–573 (1977). That is also why in *Carpenters* v. *United States*, 330 U. S. 395 (1947), the Court did not treat as harmless a jury instruction that mistakenly did not require express authorization or ratification to hold a union criminally liable for its officers' participation in an antitrust conspiracy—regardless of how overwhelming the evidence that authorization or ratification in fact existed. We said:

> "No matter how strong the evidence may be of an association's or organization's participation through its agents in the conspiracy, there must be a charge to the jury setting out correctly the limited liability under [the Norris-LaGuardia Act, 47 Stat. 70,] of such association or organization for acts of its agents. For a judge may not direct a verdict of guilty no matter how conclusive the

evidence. There is no way of knowing here whether the jury's verdict was based on facts within the condemned instructions . . . or on actual authorization or ratification of such acts . . . ." *Id.*, at 408–409 (footnotes omitted).

In other words, "the question is not whether guilt may be spelt out of a record, but whether guilt has been found by a jury according to the procedure and standards appropriate for criminal trials." *Bollenbach* v. *United States*, 326 U. S. 607, 614 (1946). "Findings made by a judge cannot cure deficiencies in the jury's findings as to the guilt or innocence of a defendant resulting from the court's failure to instruct it to find an element of the crime." *Cabana* v. *Bullock*, 474 U. S. 376, 384–385 (1986).

These principles necessarily circumscribe the availability of harmless-error analysis when a jury has been instructed to apply a conclusive presumption. If the judge in the present case had instructed the jury, "You are to apply a conclusive presumption that Carella embezzled the rental car if you find that he has blue eyes and lives in the United States," it would not matter, for purposes of assuring Carella his jury-trial right, whether the record contained overwhelming evidence that he in fact embezzled the car. For nothing in the instruction would have directed the jury, or even permitted it, to consider and apply that evidence in reaching its verdict. And the problem would not be cured by an appellate court's determination that the record evidence *unmistakably* established guilt, for that would represent a finding of fact by judges, not by a jury. As with a directed verdict, "the error in such a case is that the wrong entity judged the defendant guilty." *Rose* v. *Clark, supra*, at 578.

Four Members of the Court concluded as much in *Connecticut* v. *Johnson*, 460 U. S. 73 (1983) (plurality opinion), which considered whether it could be harmless error to instruct a jury that "every person is conclusively presumed to intend the natural and necessary consequences of his act." *Id.*, at 78. JUSTICE BLACKMUN wrote for the plurality:

"An erroneous presumption on a disputed element of a crime renders irrelevant the evidence on the issue because the jury may have relied upon the presumption rather than upon that evidence. If the jury may have failed to consider evidence of intent, a reviewing court cannot hold that the error did not contribute to the verdict. The fact that the reviewing court may view the evidence of intent as overwhelming is then simply irrelevant. To allow a reviewing court to perform the jury's function of evaluating the evidence of intent, when the jury never may have performed that function, would give too much weight to society's interest in punishing the guilty and too little weight to the method by which decisions of guilt are to be made." *Id.*, at 85–86 (footnotes omitted).

The plurality therefore determined—I think correctly—that the use of conclusive presumptions could be harmless error only in those "rare situations" when "the reviewing court can be confident that [such an] error did not play any role in the jury's verdict." *Id.*, at 87. The opinion mentioned as among those "rare situations" an instruction establishing a conclusive presumption on a charge of which the defendant was acquitted (and not affecting other charges), and an instruction establishing a conclusive presumption with regard to an element of the crime that the defendant in any case admitted. *Ibid.*

Another basis for finding a conclusive-presumption instruction harmless explains our holding two Terms ago in *Pope* v. *Illinois*, 481 U. S. 497 (1987). Although the error in instruction held to be harmless there was not a conclusive presumption but rather misdescription of an element of the offense, the latter like the former deprives the jury of its factfinding role, and must be analyzed similarly. (Thus, as noted earlier, misdescription of an element of the offense has similarly been held not curable by overwhelming record evidence of guilt. See *Carpenters* v. *United States*, *supra*, at 408–409.)

In both convictions at issue in *Pope* the juries had been instructed to apply a "community standar[d]" in deciding whether allegedly obscene magazines, "'taken as a whole, lac[k] serious literary, artistic, political, or scientific value.'" 481 U. S., at 498–499 (citation omitted). The Court concluded, however, that the First Amendment required a different finding: "whether a reasonable person would find such value in the material, taken as a whole." *Id.*, at 501. Even though the juries were not instructed to make the precise finding necessary to convict the defendants, the Court held that the error was harmless. I joined that opinion only because I believed that no rational juror could plausibly have found the magazines utterly lacking in value *under a community standard* and come to a different conclusion *under a reasonable person standard.* See *id.*, at 504 (SCALIA, J., concurring). In an appropriate case, a similar analysis could lead to the conclusion of harmless error for a conclusive presumption: When the predicate facts relied upon in the instruction, or other facts necessarily found by the jury, are so closely related to the ultimate fact to be presumed that no rational jury could find those facts without also finding that ultimate fact, making those findings is functionally equivalent to finding the element required to be presumed. The error is harmless because it is "beyond a reasonable doubt," *Chapman* v. *California*, 386 U. S. 18, 24 (1967), that the jury found the facts necessary to support the conviction.

The Court's opinion does not discuss any of this precedent, but relies exclusively upon citation of, and quotation from, *Rose* v. *Clark.*\* See *ante*, at 266–267. In that case we ac-

---

\**Sandstrom* v. *Montana*, 442 U. S. 510 (1979), is also cited, see *ante*, at 266, but only (or only properly) for the proposition that we need not conduct harmless-error analysis ourselves, not for the proposition that harmless-error analysis is applicable. In *Sandstrom* we "decline[d] to reach" not only the State's claim that the flawed instruction "constituted harmless error," but also the defendant's claim that "in any event an unconstitutional jury instruction on an element of the crime can never constitute harmless error." 442 U. S., at 526–527.

knowledged the possibility of harmless error (and remanded for determination of that issue) with respect to an instruction that said: "[I]f the State has proven beyond a reasonable . . . doubt that a killing has occurred, then it is presumed that the killing was done maliciously. But this presumption may be rebutted . . . ." 478 U. S., at 574. In explaining why the use of an impermissible presumption, unlike the granting of a directed verdict for the State, can in some circumstances be deemed harmless error, we observed:

> "When a jury is instructed to presume malice from predicate facts, it still must find the existence of those facts beyond a reasonable doubt. . . . In many cases, the predicate facts conclusively establish intent so that no rational jury could find that the defendant committed the relevant criminal act but did not *intend* to cause injury. . . . In that event . . . the jury has found . . . 'every fact necessary' to establish every element of the offense beyond a reasonable doubt." *Id.*, at 580–581 (emphasis in original).

That passage suggests the mode of analysis just discussed in connection with *Pope*. Were that all which *Rose* contained on the subject, or were the Court willing to make explicit that the more usual harmless-error analysis does not apply, today's opinion could be regarded as terse but not misleading. Elsewhere, however, *Rose* says that usual harmless-error analysis *is* applicable: "Where a reviewing court can find that the record developed at trial establishes guilt beyond a reasonable doubt, the interest in fairness has been satisfied and the judgment should be affirmed," 478 U. S., at 579; see *id.*, at 583. I therefore think it at best misleading to suggest without qualification that *Rose* governs here.

Even if *Rose*'s more expansive description of the sort of harmless-error analysis available is accepted with regard to the type of presumption at issue in that case—a rebuttable presumption—it need not (and for the reasons discussed above cannot) be accepted for *conclusive* presumptions such

as that in the present case. The *Rose* jury, instructed regarding a rebuttable presumption of malice, could—indeed, was compelled to—weigh the relevant evidence and decide whether the presumption had been overcome. It had made a finding regarding the elemental fact, and the only difficulty was that the burden of proof had been placed upon the defendant rather than the State. It is one thing to say that the effect of this erroneous burden shifting will be disregarded if "the record developed at trial establishes guilt beyond a reasonable doubt"; it is quite another to say that the jury's failure to make *any* factual determination of the elemental fact—because of a conclusive presumption resting upon findings that do not establish beyond a reasonable doubt the elemental fact—will be similarly disregarded.

For these reasons, I concur only in the judgment of the Court.