UNITED STATES of America,
Plaintiff–Appellee,

v.

Xue FEI LIN, Defendant–Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Min SHUN HU, Defendant–Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Jian LI LIN, aka Jing Li Lin,
Defendant–Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Tien Sin JIANG, aka Zhen Xing
Chen, Defendant–Appellant.

Nos. 96–30237, 96–30238, 96–
30239 and 96–30240.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 8, 1997.

Decided March 30, 1998.

Peter Camiel, Seattle, Washington, for defendant-appellant Lin.

Jon Zulauf, Seattle, Washington, for defendant-appellant Shun.

James Vonasch, Seattle, Washington, for defendant-appellant Jian Lin.

Bruce Erickson, Seattle, Washington, for defendant-appellant Jiang.

Joanne Y. Maida and Andrew R. Hamilton, Assistant United States Attorneys, Seattle, Washington, for plaintiff-appellee.

Before: WRIGHT and SCHROEDER, Circuit Judges, and SCHWARZER,* District Judge.

SCHROEDER, Circuit Judge:

These appeals challenge convictions and sentences imposed as a result of a brutal kidnapping of illegal Chinese immigrants for the purpose of extorting money from the victims' families in the People's Republic of China. Xue Fei Lin ("Fei Lin") (96–30237), Min Shun Hu ("Hu") (96–30238), Jian Li Lin ("Li Lin") (96–30239), and Tien Sin Jiang ("Jiang") (96–30240) all appeal their convictions and sentences imposed for one count of conspiracy (18 U.S.C. § 371), three counts of

* Honorable William W Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation.

hostage taking (18 U.S.C. §§ 2, 1203), and three counts of making ransom demands (18 U.S.C. §§ 2, 875(a)).

In this opinion we consider their contentions that raise the most significant legal issues regarding jury instructions and the burden of proof on the substantive counts. We deal separately, in an accompanying Memorandum Disposition, with their remaining contentions and those of codefendant Ching Lin who pleaded guilty.

The issues we deal with here principally concern the appellants' defense of duress. Appellants maintain that they were forced to participate in the kidnapping and torture under threat of murder to themselves and their families in China. The district court instructed the jury on the affirmative defense of duress, and the jury rejected it. Appellants maintain that the jury was not properly instructed on the element of intent, and that it should additionally have been instructed that the government bore the burden of disproving the existence of duress beyond a reasonable doubt. We hold that any error in connection with the instructions on intent was harmless because the jury must have found the appellants intended to commit the acts in question, and that the court was not required to instruct the jury that the government had to disprove duress.

## FACTUAL BACKGROUND

This case involves the kidnapping of three illegal Chinese immigrants. Appellants, also illegal Chinese immigrants, held the victims captive in a rented house in the Seattle area for nine days until the FBI intervened and rescued the victims.

The kidnapping began on August 24, 1995, when two males and a female were lured to a rented home where they were held captive by all four appellants and two additional (now fugitive) coconspirators. The victims were nationals of the People's Republic of China (PRC) who upon arriving in the United States had been detained by INS authorities and placed in Tacoma area foster homes. Upon arrival at the rented house, the victims were restrained, stripped, and bound with duct tape.

Over the next nine days appellants initiated calls to the families of the victims, demanding ransom money in exchange for the victims' lives. During this time the victims were subjected to brutal assaults in addition to threats of death, torture, and mutilation. The female victim was raped by one of the coconspirators, who is now a fugitive. On September 2, 1995, FBI agents came and rescued the victims. The two male victims had been scheduled to be killed that evening.

Li Lin, Fei Lin, Shun Hu, and Jiang were tried together. All but Jiang testified. Li Lin, Fei Lin, and Shun Hu testified that they themselves were victims who had been abducted and beaten, and forced by smugglers known as "Snakeheads" to beg their families for ransom. When they were unable to pay the ransom, the Snakeheads coerced them into participating in holding the three victims under threat of murder to themselves and their families if they failed to do so.

The jury returned guilty verdicts for Jiang, Li Lin, Fei Lin, and Hu on all counts of the indictment. The district court sentenced Li Lin, Fei Lin, and Hu to 360 months of imprisonment each and Jiang to 262 months imprisonment. Each appellant filed a timely notice of appeal.

## WHETHER THE JURY WAS PROPERLY INSTRUCTED ON THE ELEMENT OF INTENT

Appellants contend that hostage taking, 18 U.S.C. § 1203, and making ransom demands, 18 U.S.C. § 875(a), contain specific intent as an element of each offense and that the district court erred by refusing jury instructions offered by the defense that would have made this clear.

### Hostage Taking (18 U.S.C. § 1203)

The Hostage Taking Act, 18 U.S.C. § 1203, provides in relevant part: "(a) [W]hoever, whether inside or outside the United States, seizes or detains and threatens to kill, to injure, or to continue to detain another person in order to compel a third person or governmental organization to do or abstain from any act ... shall be punished by imprisonment by any term of years or for life." 18 U.S.C. § 1203. This court has not

determined whether or not 18 U.S.C. § 1203 contains a specific intent requirement.

The district court's instruction tracked the language of the statute but added the element that the defendant must have acted "knowingly." *See also United States v. Lopez–Flores,* 63 F.3d 1468, 1477 (9th Cir.1995), *cert. denied,* 516 U.S. 1082, 116 S.Ct. 794, 795, 133 L.Ed.2d 743 (1996) (discussing demand for ransom requirement of section 1203).

Appellants contend that the district court should have given their requested instruction that the jury must find that "the defendant did intentionally seize, detain and threaten to kill and injure a human being ..." and further, that "the defendant intentionally caused the victim to be seized, detained and threatened in order to compel the family of the victim to pay ransom...."

■ The statutory language, while not expressly spelling out a requirement of intent, does require the detention to be undertaken for a purpose, i.e., in order to compel a third party to do something. It thus does contemplate that the defendant must not merely engage in conduct knowingly, but purposefully and intentionally. Additionally, the D.C. Circuit has approved an instruction that the defendant could be convicted under § 1203 only if he acted "intentionally, deliberately and knowingly." *United States v. Yunis,* 924 F.2d 1086 (D.C.Cir.1991).

The jury instruction given in this case did not communicate the statutory requirements with respect to the defendants' purpose or intent as fully or perhaps redundantly as the requested instructions, but we can find no reversible error. The jury was instructed

that it had to find the defendant acted knowingly to seize or detain another person, "in order to compel a third person to pay ransom as an implicit or explicit condition for the release of the person detained." The jury must have found the requisite intent.

### *Making Ransom Demands (18 U.S.C. § 875(a))*

■ 18 U.S.C. § 875(a) provides that "[w]hoever transmits in interstate or foreign commerce any communication containing any demand or request for a ransom or reward for the release of any kidnapped person, shall be fined under this title or imprisoned...." 18 U.S.C. § 875(a). This court has not determined whether or not section 875(a) contains a specific intent requirement.

Subsection (a) is part of a larger statute with four subsections that is set forth in the margin.[1] While subsections (b) and (d) expressly spell out an element of "intent to extort," there is no such express language in subsections (a) or (c). For this reason, the government argues that there is no element of intent that needs to be proven in connection with those subsections.

The Sixth Circuit, however, has held that subsection (a) has an element of intent. *See United States v. Heller,* 579 F.2d 990, 999 (6th Cir.1978). But that court held the element was "intent to extort," while in this case appellants sought an instruction that the intent was with respect to the transmission of the communication. Therefore, the Sixth Circuit's case, standing alone, is certainly not dispositive of the issue before us.

---

1. § 875. Interstate communications

(a) Whoever transmits in interstate or foreign commerce any communication containing any demand or request for a ransom or reward for the release of any kidnapped person, shall be fined under this title or imprisoned not more than twenty years, or both.

(b) Whoever, with intent to extort from any person, firm, association, or corporation, any money or other thing of value, transmits in interstate or foreign commerce any communication containing any threat to kidnap any person or any threat to injure the person of another, shall be fined under this title or imprisoned not more than twenty years, or both.

(c) Whoever transmits in interstate or foreign commerce any communication containing any

threat to kidnap any person or any threat to injure the person of another, shall be fined under this title or imprisoned not more than five years, or both.

(d) Whoever, with intent to extort from any person, firm, association, or corporation, any money or other thing of value, transmits in interstate or foreign commerce any communication containing any threat to injure the property or reputation of the addressee or of another or the reputation of a deceased person or any threat to accuse the addressee or any other person of a crime, shall be fined under this title or imprisoned not more than two years, or both.

We nevertheless conclude that decisions from our own circuit compel us to agree with appellants on this issue. We held in *United States v. Twine,* 853 F.2d 676, 681 (9th Cir. 1988), that subsection 875(c) is a crime of specific intent. We there observed that "[s]ections 875(c) and 876 [transmitting threats to kidnap and injure via the mails] are extremely similar criminal statutes." *Id.* at 679. We held that "the showing of an intent to threaten required by §§ 875(c) and 876 is a showing of "specific intent." *Id.* at 680. We so held even though the word "intent" is not in subsection (c). This court has very recently reaffirmed the validity of *Twine. See United States v. King,* 122 F.3d 808, 811 (9th Cir.1997) ("Our conclusion in *Twine* that § 876 requires specific intent to threaten, therefore, far from being dicta, is *Twine*'s central holding").

We cannot see any meaningful distinction between subsection (a) of section 875 and subsection (c), since neither incorporates the word intent. Because we have nevertheless held subsection (c) requires a showing of specific intent to extort, subsection (a), although not containing any express language, has a parallel structure and must also embody the requirement that there be a specific intent to transmit a demand for ransom. Accordingly, we conclude that the element of specific intent is present in subsection (a). Before deciding whether reversal is required, however, we first consider appellants' related contention of instructional error.

## THE BURDEN OF PROVING OR DISPROVING DURESS

■ Appellants contend that, as a corollary to our holding that sections 1203 and 875(a) require a showing of specific intent, we must also hold that the district court should have instructed the jury that the government had the burden of proving that defendants were not acting under duress. They argue the district court erred in instructing the jury that duress was an affirmative defense on which appellants had the burden of proof by a preponderance of the evidence.

The question before us is whether duress negates the element of *mens rea* under 18 U.S.C. §§ 1203 and 875(a). As discussed above, the intent required by the former is to compel a person to pay ransom as a condition for the release of a person detained. The intent required by the latter is to transmit a demand for ransom.

This court discussed the relationship of a duress defense to intent in the context of Alaska law in *Walker v. Endell,* 850 F.2d 470 (9th Cir.1987). In challenging a state conviction for robbery and kidnapping, the defendant contended that Alaska law violated due process by requiring the defendant to prove duress by a preponderance of the evidence. We explained that in Alaska, even though a crime such as kidnapping requires a showing of intent, the existence of duress is not viewed as inconsistent with, or as a negation of, specific intent. "Thus, a defendant can restrain another with the intent to inflict injury, in the sense that he knows that his actions will lead to injury or that his purpose is to cause injury, but act in this manner in order to comply with the demands of another." *Id.* at 473. We then went on to hold that such a scheme cannot violate due process. We relied on the Supreme Court's holding in *Martin v. Ohio,* 480 U.S. 228, 107 S.Ct. 1098, 94 L.Ed.2d 267 (1987), that imposing a burden on defendants to prove self defense in a murder prosecution does not violate due process. *See Walker,* 850 F.2d at 473 (*citing Martin,* 480 U.S. at 236, 107 S.Ct. at 1103).

We recently considered whether, as a matter of federal practice, a standard other than the due process standard in *Martin* should apply with respect to duress claims in federal court. We answered in the negative and held that the due process standard applies. *United States v. Dominguez–Mestas,* 929 F.2d 1379, 1383 (9th Cir.1991). We there expressly rejected a contention that as a matter of federal practice, when there is an issue as to duress, the government must always prove its nonexistence. *Id.* at 1383–84.

Appellants rely on *Morissette v. United States,* 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952), holding that some crimes require proof of an element of "criminal intent" or wrongful purpose. They maintain one cannot formulate criminal intent if acting under duress. *Morissette* itself does not provide

much assistance. There a defendant was tried on the charge that he "did unlawfully, willfully, and knowingly steal and convert" property belonging to the United States. *Morissette,* 342 U.S. at 270, 72 S.Ct. at 253. It was undisputed that the defendant had taken the property, but he testified that he did not know that it belonged to the United States and believed that it had been abandoned. The Court held that the trial court erred in refusing to admit his testimony and in instructing the jury that the only issue was his intent to take the property. The Court explained that the statute required the government to prove that he intended to take *government* property and that the jury was therefore entitled to hear his evidence that he did not intend to take property belonging to the government. Accordingly, the instructions should have covered knowledge of government ownership. The case did not involve any contention that the government had to prove a negative, nor did it involve any issue of duress.

Like *Morissette,* most of the cases cited by the parties discussing crimes with an element of intent concern the admissibility of evidence bearing on that issue. For example, in *United States v. Hearst,* 563 F.2d 1331, 1336 (9th Cir.1977), we held that where the defendant raised the defense of duress, the government's evidence of the appellant's other criminal acts, after the bank robbery in question in that prosecution, was relevant to whether appellant was acting under duress during that robbery. In *Twine,* we held that because § 875(c) is a crime requiring a showing of specific intent, evidence relating to diminished capacity, the inability to formulate a specific intent, was relevant and admissible. *Twine,* 853 F.2d at 681.

Appellants also point to a footnote in *Dominguez–Mestas,* which itself involved a crime that placed no burden upon the government to prove "criminal intent" or "mens rea." The footnote states:

> When a charge involves *mens rea* different considerations are present. It is clear that once a defendant has presented facts which, if believed, would justify the inference of duress, the trier must consider that inference in determining whether the prosecution has proved *mens rea. See Martin*

*v. Ohio,* 480 U.S. 228, 107 S.Ct. 1098, 94 L.Ed.2d 267 (1987).

*Id.* at 1384 n. 3. Appellants contend that this footnote can be interpreted as requiring an instruction in this case that the government had the burden of showing a lack of duress. We believe this interpretation is incorrect for at least two reasons.

First, while we agree with appellants that §§ 1203 and 875(a) require the government to show intent, we do not agree that they require the government to show a guilty knowledge or a criminal state of mind. Duress no more negates the element of intent in this case than it did in *Walker v. Endell.* The government should bear no higher burden to show intent in these statutes than it did under the Alaska kidnapping statute which contained an express requirement of intent. *See Walker,* 850 F.2d at 473. The district court properly instructed the jury that the government did not have to prove that the defendants knew their conduct was unlawful. The defendants do not even challenge that instruction on appeal.

■ Second, we do not read the footnote as contemplating an instruction as to a shifting burden in any case. The citation in the footnote is to *Martin v. Ohio,* where the Court in relevant part held that while the defendant properly had the burden of proof on self defense, the jury could not be instructed to ignore that evidence in determining whether the government had proved its case. Instructions should be adequate to convey to the jury "that all the evidence, including the evidence going to [the defense] must be considered in deciding whether there was a reasonable doubt about the sufficiency of the state's proof of the elements of the crime." *Martin,* 480 U.S. at 229, 233–34, 107 S.Ct. at 1099–1100, 1102. *Martin* did not imply a burden shift. Moreover, we used quite broad language in *Dominguez–Mestas* to point out the difficulties inherent in requiring the government to prove a negative. *Dominguez–Mestas,* 929 F.2d at 1384. We were not sanctioning an express instruction on burden shifting even in a case where criminal intent need be proved.

For all these reasons we conclude that there is no error in the jury instructions on the burden of proof.

## REVERSIBLE ERROR

█ We still must consider whether the district court's error in failing to instruct on the element of intent in connection with § 875(a) is reversible error. Where a judge fails to instruct a jury that the actor must have the specific intent to commit the crime, there is constitutional error because the jury did not have the opportunity to find each element of the crime beyond a reasonable doubt. *See Martinez v. Borg*, 937 F.2d 422, 423 (9th Cir.1991); *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). Because there was constitutional error in appellants' trial, we are left with the question whether that error was harmless. We conclude that it was.

█ This court applies the harmless error analysis advanced by Justice Scalia in *Carella v. California*, 491 U.S. 263, 266–71, 109 S.Ct. 2419, 2421–24, 105 L.Ed.2d 218 (1989) (Scalia, J., concurring), when jury instructions omit an element of the offense. *See Martinez v. Borg*, 937 F.2d 422, 423 (9th Cir.1991). Rather than reviewing the record to determine if the evidence overwhelmingly establishes the defendant's guilt, the analysis involves a review of the court's instructions and what the jury found. Therefore, in light of the jury's findings, "[t]he error is harmless if no rational jury would have made these findings without also finding that appellant had the specific intent to [commit the crime]." *Id.* at 425.

The jury was instructed with respect to making ransom demands that the government was required to prove beyond a reasonable doubt that the defendant "knowingly transmitted a communication containing a demand for ransom," and, further that the ransom was demanded for: "the release of a kidnapped person." Appellants never asserted that their conduct was innocent or accidental, but rather that it was committed as a result of coercion. Based on the evidence, it would not have been possible for the jury to find that appellants knowingly transmitted those demands without also finding that appellants purposefully or intentionally transmitted those demands. *See United States v. Bailey*, 444 U.S. 394, 405, 100 S.Ct. 624, 632,

62 L.Ed.2d 575 (1980) (noting that in most crimes the limited distinction between knowledge and purpose has not been considered important). Moreover, the jury was instructed with respect to specific intent in connection with the conspiracy. The jury was instructed to find that a defendant became a member of the conspiracy knowing of its object, to make ransom demands or take hostages, and "intending to help accomplish" that object. Thus, the jury necessarily found the requisite specific intent with regard to either ransom demands or hostage taking. Given the conduct at issue, we can see no rational basis to conclude that the jury could have found that appellants specifically intended to commit one crime but not the other. Accordingly, it would not have been possible for the jury, on the basis of the same evidence, to find that the appellants intended to conspire to commit the crimes, but did not intend the crimes that resulted from their conduct. *See Carella*, 491 U.S. at 266–73, 109 S.Ct. at 2421–24; *Borg*, 937 F.2d at 425.

## CONCLUSION

Accordingly, with respect to all the issues discussed in this opinion, the judgments of conviction are AFFIRMED.