BRISCOE, Circuit Judge,
concurring:
I agree with the majority that Patton has failed to establish that he is entitled to federal habeas relief. I write separately, however, because I disagree with the majority’s conclusion that the first-degree malice aforethought murder instruction given by the trial court did not relieve the prosecution of its burden of proving intent beyond a reasonable doubt. As set forth in greater detail below, I conclude the instruction did, in fact, impermissibly relieve the prosecution of its burden, but that, given the strength of the prosecution’s evidence of Patton’s intent, the resulting error was harmless.
It is well established that “the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.” In re Winship, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). In Sandstrom v. Montana, 442 U.S. 510, 512, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), the Supreme Court was asked to decide whether this principle was violated by a jury instruction stating “the law presumes that a person intends the ordinary consequences of his voluntary acts.” The Court determined, as a threshold matter, that the answer to the question hinged “upon the way in which a reasonable juror could have interpreted the instruction.” Id. at 514, 99 S.Ct. 2450. The Court then concluded that a reasonable juror “could easily have viewed [the] instruction as mandatory,” since the jury was “not told that they had a choice, or that they might infer that conclusion [i.e., that a person intends the ordinary consequences of his voluntary acts]....” Id. at 515, 99 S.Ct. 2450. More *816 specifically, the Court suggested that a reasonable juror might have understood that the presumption was either conclusive (that is, the instruction was “an irrebutta-ble direction by the court to find intent once convinced of the facts triggering the presumption”), or else that it was “a direction to find intent upon proof of the defendant’s voluntary actions (and their ‘ordinary’ consequences), unless the defendant proved the contrary by some quantum of proof which may well have been considerably greater than ‘some’ evidence.” Id. at 517, 99 S.Ct. 2450. Thus, the Court concluded the instruction could have effectively shifted to a criminal defendant the burden of proof on the issue of intent. Id. at 518-21, 99 S.Ct. 2450.
The Supreme Court subsequently revisited the Winship principles in Francis v. Franklin, 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985), a federal habeas ease brought by a Georgia state prisoner convicted of murder and sentenced to death. At issue in Francis were two jury instructions that involved presumptions regarding intent. The first stated: “[t]he acts of a person of sound mind and discretion are presumed to be the product of the person’s will, but the presumption may be rebutted.” Id. at 309, 105 S.Ct. 1965. The second stated: “[a] person of sound mind and discretion is presumed to intend the natural and probable consequences of his acts but the presumption may be rebutted.” Id.
In analyzing these two instructions, the Court noted that the critical question was whether they “createfd] ... mandatory presumption[s], ... or merely ... permissive inferencefs]....” Id. at 314, 105 S.Ct. 1965. “A mandatory presumption,” the Court explained, “instructs the jury that it must infer the presumed fact if the State proves certain predicate facts,” and will violate the Due Process Clause if it “relieve[s] the State of the burden of persuasion on an element of an offense.” Id. In contrast, the Court stated, “[a] permissive inference suggests to the jury a possible conclusion to be drawn if the State proves predicate facts, but does not require the jury to draw that conclusion.” Id. “A permissive inference does not relieve the State of its burden of persuasion because it still requires the State to convince the jury that the suggested conclusion should be inferred based on the predicate facts proved.” Id. Further, a permissive inference “violates the Due Process Clause only if the suggested conclusion is not one that reason and common sense justify in light of the proven facts before the jury.” Id. at 314-15, 105 S.Ct. 1965.
To determine which category a particular instruction falls into, the Court explained, the “[ajnalysis must focus initially on the specific language challenged....” Id. at 315, 105 S.Ct. 1965. However, the Court emphasized, that does not end the inquiry:
If a specific portion of the jury charge, considered in isolation, could reasonably have been understood as creating a presumption that relieves the State of its burden of persuasion on an element of an offense, the potentially offending words must be considered in the context of the charge as a whole. Other instructions might explain the particular infirm language to the extent that a reasonable juror could not have considered the charge to have created an unconstitutional presumption.

Id.

Applying this analytical framework to the two instructions at issue before it, the Court noted that both instructions were “cast in the language of command” because they used the phrases “are presumed” and “is presumed.” Id. at 316, 105 S.Ct; 1965. Thus, the Court concluded, *817 the instructions could have been viewed by a reasonable juror as mandatory, and in turn would have undermined the juror’s responsibility of finding the ultimate facts beyond a reasonable doubt. Id. Although the Court acknowledged that both instructions informed the jury the presumptions were rebuttable, id. at 316-17, 105 S.Ct. 1965, it concluded that a reasonable juror could have understood this language as indicating “that the defendant bore an affirmative burden of persuasion once the State proved the underlying act giving rise to the presumption.” Id. at 318, 105 S.Ct. 1965. Thus, the Court concluded the instructions, standing alone, “undeniably created an unconstitutional burden-shifting presumption with respect to the element of intent.” Id. Finally, the Court concluded that the jury charge “taken as a whole” did not “explain[ ] the proper allocation of burdens with sufficient clarity that any ambiguity in the particular language challenged could not have been understood by a reasonable juror as shifting the burden of persuasion.” Id. at 318-19, 105 S.Ct. 1965. In particular, the Court concluded that “general instructions as to the prosecution’s burden [of persuasion] and the defendant’s presumption of innocence d[id] not dissipate the error in the challenged portion of the instructions.” Id. at 320, 105 S.Ct. 1965.
In Patton’s case, the state trial court, as part of its first-stage jury instructions pertaining to the first-degree malice aforethought murder charge, provided the jury with the following instruction, taken directly from Okla. Stat. tit. 21, § 702: “A design to effect death is inferred from the fact of killing, unless the circumstances raise a reasonable doubt whether such design existed.” State Court Record, Vol. Ill at 537. Patton challenged the constitutionality of this instruction in his direct appeal. The OCCA concluded there was no merit to Patton’s challenge:
[Patton] also finds error in Instruction No. 30. This instruction is taken from 21 O.S.1991, § 702, which provides:
A design to effect death is inferred from the fact of killing, unless the circumstances raise a reasonable doubt whether such design existed.
(O.R.537). This type of instruction and whether it absolves the State from proving each and every element of the offense beyond a reasonable doubt has been previously discussed by this Court. See Davis v. State, 665 P.2d 1186, 1195 (Okl.Cr.1983); Assadollah v. State, 632 P.2d 1215, 1221 (Okl.Cr.1981) (Brett, P.J. concurs in part/dissents in part). In Hall v. State, 635 P.2d 618, 620-21 (Okl.Cr.1981), cert. denied, 455 U.S. 951, 102 S.Ct. 1455, 71 L.Ed.2d 666 (1982) this Court found no error in giving an instruction"' based on section 702 as the instructions as a whole fully informed the jury of the State’s burden of proof on the question of the defendant’s design to effect death. This Court further noted that the jury was also instructed that all elements of the offense must be proven beyond a reasonable doubt and that a premeditated design to effect death must be found in order to return a conviction for murder. In the present case, the jury was instructed on the elements of first degree murder, that each element must be proven by the State beyond a reasonable doubt, and that “malice aforethought” means “a deliberate intent to take away the life of a human being.” The concerns raised in previous cases are not present here as the instructions clearly placed the burden of proof on the question of intent with the State, and not with the defense.
Patton v. State, 973 P.2d 270, 288-89 (Okla.Crim.App.1998) (“Patton I”). Because Patton has challenged the OCCA’s ruling in his federal habeas petition, the *818 question we now face is whether the OCCA’s decision is contrary to, or an unreasonable application of, Sandstrom and Francis.
As outlined in Sandstrom and Francis, the threshold question is how a reasonable jury could have interpreted the challenged instruction.[1] In my view, the instruction at issue created a mandatory presumption, rather than a permissive inference. More specifically, because the challenged instruction stated that “[a] design to effect death is inferred from the fact of killing,” a reasonable juror clearly could have interpreted this language as mandatory.[2] See Wiley v. Rayl, 767 F.2d 679, 681 (10th Cir.1985) (reaching similar conclusion with respect to similar instruction employed in Kansas ease). In other words, the use of the phrase “is inferred” could have led a reasonable juror to conclude that he or she did not have a choice about whether to infer a design to effect death.[3]
The next question is what effect, if any, the final phrase of the instruction (“unless the circumstances raise a reasonable doubt whether such design existed”) likely would have had on the jury. Although this language arguably created a rebuttable presumption, the instruction was silent with respect to which party carried the burden of rebutting the presumption. Thus, as in Francis, a reasonable juror could have concluded it was the defendant, rather than the State, who bore the burden of rebutting the presumption created by the fact of the killing, i.e., by demonstrating that “the circumstances raise[d] a reasonable doubt whether” a design to effect death “existed.”
The remaining question under the Sand-strom/Francis framework is whether the instructions as a whole “explain[ed] the particular infirm language to the extent that a reasonable juror could not have considered the charge to have created an unconstitutional presumption.” Francis, 471 U.S. at 315, 105 S.Ct. 1965. The trial court expressly instructed the jury that Patton was presumed innocent of the charges against him. State Court Record, Vol. Ill, at 512. Further, several of the trial court’s instructions to the jury expressly indicated that the prosecution bore the burden of proving beyond a reasonable doubt every element of the first degree murder charge. Id. at 512 (Inst. No. 5), 516 (Inst. No. 9), 531 (Inst. No. 24); 533 (Inst. No. 26); 548 (Inst. No. 41). Apparently, it was these instructions which the OCCA relied upon in concluding that “the instructions [as a whole] clearly placed the burden of proof on the question of intent *819 with the State, and not with the defense.” Patton I, 973 P.2d at 289.
The problem with the OCCA's conclusion in this regard is that it is directly contrary to the Supreme Court’s decision in Francis. In concluding that the general instructions utilized by the trial court were sufficient to cure any error, the OCCA relied on three of its own cases in which similar issues had been raised and addressed. See id. Notably, however, all three of those cases predated Francis, and thus were decided without the benefit of the Court’s discussion of why such general instructions are insufficient to cure an instructional error that shifts the burden of proof to a defendant. In Francis, the Court held that “general instructions on the State’s burden of persuasion and the defendant’s presumption of innocence are not rhetorically inconsistent with a conclusive or burden-shifting presumption, because the jury could have interpreted the two sets of instructions as indicating that the presumption was a méans by which proof beyond a reasonable doubt as to intent could be satisfied_” 471 U.S. at 319, 105 S.Ct. 1965 (internal quotations omitted). Thus, contrary to the conclusion reached by the OCCA in Patton’s direct appeal, the Court held that such general instructions “do not dissipate the error in the challenged” instruction.[4] Id. at 320.
Having concluded that the challenged instruction impermissibly shifted the burden of persuasion to Patton and thus violated his constitutional rights (and that the OCCA’s resolution of this issue was contrary to, or an unreasonable application of, Franklin), there remains the question of whether the error was harmless. See Carella v. California, 491 U.S. 263, 266, 109 S.Ct. 2419, 105 L.Ed.2d 218 (1989) (noting that a Sandstrom/Franklin error is subject to harmless error review); Rose v. Clark, 478 U.S. 570, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986) (same); Buehl v. Vaughn, 166 F.3d 163, 177 (3d Cir.1999) (same); cf. Neder v. United States, 527 U.S. 1, 7-8, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999) (holding that omission of -element from the judge’s - charge to the jury is subject to harmless error .review under Rule 52(a)), Because the OCCA did not reach this issue, it. is reviewed de novo by this court under the harmless error standard announced in Brecht v. Abrahamson, 507 U.S, 619, 637-38, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993). See Herrera v. Lemaster, 301 F.3d 1192,1195 (10th Cir.2002) (en banc). Under the Brecht standard, the question is whether the error had substantial and injurious effect or influence in determining the jury’s verdict, i.e., whether the error resulted in “actual prejudice.” If the evidence is so evenly balanced that we are in grave doubt about whether the error meets this standard, we must hold that the error is not harmless. See O’Neal v. McAninch, 513 U.S. 432, 436-37; 115 S.Ct. 992, 130 L.Ed.2d 947 (1995).
A close examination of the trial transcript in this case indicates that the evidence of Patton’s intent to kill Charlene *820 Kauer was extremely strong, if not overwhelming. The nature and extent of Charlene Kauer’s injuries, viewed alone, strongly suggests that Patton intended to kill her. Further, although Patton repeatedly asserts he was under the influence of cocaine at the time of the killing and was unable to form the intent to kill, that defense was far from convincing. In particular, Patton’s involuntary intoxication defense was effectively undermined not only by the confusing testimony of his expert witness, but more importantly by his own lack of credibility (as demonstrated by the constantly-varying stories he gave to the police following his arrest) and his actions after the killing (i.e., cleaning up, disposing of his bloody clothing, returning to work and acting as if nothing had happened). Thus, the evidence on the issue of intent was far from “evenly divided,” and I am not persuaded that the instructional error at issue here had a substantial and injurious effect or influence in determining the jury’s verdict. Accordingly, I conclude Patton is not entitled to federal habeas relief on this claim.

. The OCCA did not expressly address this question in Patton I. However, due to the fact that the OCCA reviewed the instructions as a whole, it can arguably be inferred that the OCCA concluded the instruction at issue created a mandatory presumption, rather than a permissive inference.

. The district court in this case concluded that the language of the challenged instruction merely created a permissive inference. ROA, Vol. 1, Doc. 21 at 55. In reaching this conclusion, the district court relied on this court’s decision in Davis v. Maynard, 869 F.2d 1401, 1405 (10th Cir.1989). The district court's reliance on Davis, however, was misplaced because the challenged instruction in Davis employed the phrase "may be inferred,” rather than the phrase "is inferred.” Id.

. As noted in Patton’s opening appellate brief, Oklahoma's Uniform Instruction committee has advised against using an instruction such as the one given by the trial court in this case due to concerns that it " ‘may prove confusing to the jurors because it suggests a conclusion that the jury is required to draw where they find that the defendant killed the deceased. ...' ” Aplt. Br. at 27 (quoting Oklahoma Uniform Jury Instructions-CR-63, page 149, Attachment B).

. At the time of the trial in this case, Oklahoma law provided that "[wjhenever the existence of a- presumed fact against the accused establishes guilt or is an element of the offense ... and is submitted to the jury, the judge shall give an instruction explaining that the jury may regard the basic facts as sufficient evidence of the presumed fact but is not required to do so” and "that its existence must be proved beyond a reasonable doubt.” Okla. Stat. tit. 12, § 2304(C). Unfortunately, however, the trial court did not provide such an instruction to the jury in Patton’s case, and Patton's defense counsel did not make a request for such an instruction. ' See Patton I, 973 P.2d at 289 (addressing and rejecting Patton’s argument that his defense counsel was ineffective for not objecting to the trial court's failure to give such an instruction). Had such an instruction been given, it would arguably have been sufficient to cure the error created by the challenged instruction.