# UNITED STATES COAST GUARD COURT OF CRIMINAL APPEALS
## Washington, D.C.

## UNITED STATES

### v.

## Christopher M. UPHAM,
## Lieutenant (O-3), U.S. Coast Guard

## CGCMG 0204

## Docket No. 1235

## 20 December 2006

General Court-Martial convened by Commander, Maintenance and Logistics Command Atlantic. Tried at Washington, D.C., on 6-10 December 2004.

| | |
|---|---|
| Military Judge: | CAPT John W. Rolph, JAGC, USN |
| Trial Counsel: | LCDR Monica L. Lombardi, USCGR |
| Assistant Trial Counsel: | LT Patrick M. Flynn, USCG |
| Civilian Defense Counsel: | Richard V. Stevens, Esquire |
| Detailed Defense Counsel: | LT Adrienne Gagliardo, JAGC, USNR |
| Civilian Appellate Defense Counsel: | Frank J. Spinner, Esquire |
| Detailed Appellate Defense Counsel: | LCDR Nancy J. Truax, USCG |
| Appellate Government Counsel: | CDR Jeffrey C. Good, USCG |

## BEFORE
## PANEL THREE
## BAUM, KANTOR, & McCLELLAND
Appellate Military Judges

McCLELLAND, Judge:

Appellant was tried by a general court-martial composed of members. Pursuant to his plea of guilty, Appellant was convicted of one specification of conduct unbecoming an officer and a gentleman, in violation of Article 133, Uniform Code of Military Justice (UCMJ). Contrary to his plea, Appellant was also convicted of one specification of committing an aggravated assault, in violation of Article 128, UCMJ. The court sentenced Appellant to a dismissal, confinement for nine months, and forfeiture of all pay and allowances. The Convening Authority approved the sentence as adjudged.

Before this Court, Appellant has assigned two errors: (1) that the military judge's instruction to the members on Charge I under Article 128, UCMJ, amounted to a directed verdict of guilty in violation of Appellant's Fifth Amendment right to have his guilt proved beyond a reasonable doubt and his Sixth Amendment right to a jury verdict; and (2) that the evidence is factually and legally insufficient to support the finding of guilty of the specification under Charge I. The Court heard oral argument on both assignments on 29 March 2006.

## Facts

Appellant is HIV-positive, that is, infected with the Human Immunodeficiency Virus (HIV), the virus that causes AIDS. (Prosecution Ex. 1; R. at 522.) In the early morning hours of 7 October 2003, Appellant twice engaged in sexual intercourse with a woman, KB, without using a condom and without informing KB of his HIV-positive status. (R. at 522.)

Appellant was diagnosed as HIV-positive in 1998. Between diagnosis and 7 October 2003, Appellant's plasma was tested on multiple occasions to determine his "viral load." (Prosecution Ex. 1.) "Viral load" refers to the number of virions per cubic milliliter in the blood, and is used to determine a course of treatment. (R. at 435, 438.) On each occasion, Appellant's viral load was low, but detectable. (R. at 440.) Also on multiple occasions, Appellant signed an "HIV Counseling Statement," acknowledging that "I am infected with the Human Immunodeficiency Virus (HIV), the virus that causes AIDS. ... I may potentially infect others with HIV through intimate sexual contact." (Prosecution Ex. 1.)

Detailed medical testimony at trial established that HIV causes progressive depletion of the body's immune system; that there is no cure; that left untreated, ninety-five percent of persons infected with HIV will develop AIDS and die; that since 1996, treatment is available that prevents the HIV from causing further damage to the body's immune system; that this treatment must be maintained continuously for the lifetime of the patient; that if treatment is stopped, the virus can re-emerge and cause additional destruction to the immune system. Further, the long-term prognosis for those infected with HIV remains uncertain, as the treatment has side effects and little is known about the long-term toxic effects of the treatment. However, given the current state of knowledge about this disease, it is fair to say that HIV-infected patients who adhere to the

treatment regimen likely will not die from AIDS, although they might die from a consequence of the treatment.  (R. at 429-83.)

The medical witness testified that HIV-positive patients are considered infectious even if their viral loads are below the detectable level.  (R. at 434.)  He testified more specifically that given Appellant's low viral load, "I cannot say he's not infectious" (R. at 441-42), but that KB's risk of contracting HIV was very low (R. at 465).

The specification under Charge I under Article 128, UCMJ, alleged that Appellant "commit[ted] an assault upon a female by wrongfully having unprotected vaginal intercourse with a means likely to produce death or grievous bodily harm, to wit:  unprotected vaginal intercourse while knowing he was infected with the Human Immunodeficiency virus."

The military judge instructed the members on the elements of the offense as follows, over objection by the defense to the italicized portion:

> In order to find the accused guilty of this offense you must be convinced by legal and competent evidence beyond a reasonable doubt of the following elements:
>
> First, that at or near Washington, D.C., on or about 7 October 2003, the accused did bodily harm to [KB].
>
> Second, that the accused did so with a certain means; that is by engaging in unprotected vaginal intercourse with [KB], while knowing he was infected with the human immunodeficiency virus, HIV.
>
> Third, that the bodily harm was done with unlawful force or violence.
>
> And, fourth, that the means was used in a manner likely to produce death or grievous bodily harm.
>
> For purposes of this offense, an assault is an attempt or offer with unlawful force or violence to do bodily harm to another.  An assault in which bodily harm is inflicted is called a battery.  A battery is an unlawful and intentional application of force or violence to another.  Bodily harm means any physical injury to or offensive touching of another person, however slight. An act of force or violence is unlawful if done without legal justification or excuse and without the lawful consent of the victim.

3

"Means" may be any means or object not normally considered a weapon. A means is likely to produce death or grievous bodily harm when the natural and probable results of its particular use would be death or grievous bodily harm. It is not necessary that death or grievous bodily harm actually result.

Now grievous bodily harm means serious bodily injury. Grievous bodily harm does not mean minor injuries such as a black eye or a bloody nose but it does mean injuries such as fractured or dislocated bones, deep cuts, torn members of the body, serious damage to internal organs or other serious bodily injuries.

Now the likelihood of death or grievous bodily harm is determined by two factors: Those two factors are (1) the risk of the harm and (2) the magnitude of the harm. In evaluating the risk of harm, the risk of death or grievous bodily harm must be more than a merely fanciful, speculative or remote possibility. In evaluating the magnitude of the harm, the consequence of death or grievous bodily harm must be at least probable and not just possible or in other words death or grievous bodily harm would be a natural and probable consequence of the accused'[s] act.

Where the magnitude of the harm is great, you may find that an aggravated assault exists even though the risk of harm is statistically low. For example, if someone fires a rifle bullet into a crowd and a bystander in the crowd is shot, then to constitute an aggravated assault the risk of harm of hitting that person need only be more than merely a fanciful, speculative or remote possibility since the magnitude of harm which the bullet is likely to inflict on that person is great if it hits the person.

In a case of this nature the issue is not the statistical probability of HIV invading the alleged victim's body but rather the likelihood of the virus causing death or grievous bodily harm if it had invaded the alleged victim's body. The probability of infection need only be more than merely a fanciful, speculative or remote possibility.

You are advised that a person who engages in unprotected sexual intercourse with another person, knowing he is HIV positive, without informing his sexual partner and that his [sic] HIV and without using a condom has committed an offensive touching of that person. *Also a person who wilfully and deliberately exposes a person to seminal fluid containing HIV without informing that person of his HIV positive status and without using a condom has acted in a manner likely to produce death or grievous bodily harm.*

A specific intent to infect a victim with the HIV virus or to expose the victim to it is not required for this offense. The accused need only have intended to engage in unprotected sexual intercourse to have committed this offense.

> The fact that the alleged victim may have consented to sexual intercourse with the accused is not a defense to aggravated assault. One cannot consent to an act that is likely to produce death or grievous bodily harm.

(R. at 696-700.)

The court found Appellant guilty of Charge I and its specification.

Earlier in the proceedings, Appellant had pleaded guilty to Charge II and its specification. That specification, under Article 133, UCMJ, alleged that Appellant "wrongfully and dishonorably engage[d] in vaginal sexual intercourse with a female without informing her that he was infected with the Human Immunodeficiency Virus." During the providence inquiry, the military judge informed Appellant that the maximum sentence that could be adjudged for this offense was confinement for six months[1], forfeiture of all pay and allowances, and dismissal. (R. at 79-80.)

Before sentencing, the military judge declared that he intended to treat the two charges as multiplicious for sentencing, and that the maximum sentence was dismissal, three years confinement, and forfeiture of all pay and allowances. (R. at 727.) He instructed the court accordingly. (R. at 864.) The court sentenced Appellant to forfeit all pay and allowances, to be confined for nine months, and to be dismissed from the Coast Guard. (R. at 916.)

### Aggravated Assault

Appellant argues that whether uninformed, unprotected sexual intercourse while HIV-positive constitutes an "offensive touching," and whether it constitutes a "means likely to result in death or grievous bodily harm" were questions of fact for the members, and the military judge's instruction improperly removed these issues from the court's consideration.

The military judge relied on the cases of *United States v. Joseph*, 37 M.J. 392 (C.M.A. 1993); *United States v. Bygrave*, 46 M.J. 491 (C.A.A.F. 1997); and *United States v. Klauck*, 47 M.J. 24 (C.A.A.F. 1997), in deciding to instruct the court as he did in the italicized language set

---

[1] The maximum was agreed by the parties based on willful dereliction of duty as the most analogous offense. We agree that the maximum was at least six months confinement, but express no opinion on whether the maximum might properly have been higher.

out above. The Government concedes that this instruction was error, because it removed from the court's purview the issue of whether Appellant employed a means likely to produce death or grievous bodily harm. We agree that this was error.

The Government goes on to argue that the error is subject to harmless error analysis, citing *Yates v. Evatt*, 500 U.S. 391 (1991); *Carella v. California*, 491 U.S. 263 (1989); *Rose v. Clark*, 478 U.S. 570 (1986); and *United States v. Brewer*, 61 M.J. 425 (C.A.A.F. 2005). We agree, but we cannot say that the error here is harmless. Given the medical evidence, it is not inconceivable that the court could have had a reasonable doubt on whether the means employed was likely to produce death or grievous bodily harm. We conclude that the error is fatal to the finding that Appellant employed a means likely to produce death or grievous bodily harm.

### Assault Consummated by a Battery

In the absence of a means likely to produce death or grievous bodily harm, Appellant might have been convicted of assault consummated by a battery, a lesser offense included within the aggravated assault specification. The Court was not instructed on it as a lesser included offense, but we are not precluded from considering it. *United States v. Wells*, 52 M.J. 126 (C.A.A.F. 1999); *United States v. Berri,* 30 M.J. 1169 (C.G.C.M.R. 1990); *United States v. Pillow*, 28 M.J. 1008 (C.G.C.M.R. 1989).

Appellant argues that the assault possibility is subject to the same infirmity as the aggravated assault, in that the military judge's instructions removed from the court the issue of whether uninformed, unprotected sexual intercourse while HIV-positive constitutes an offensive touching. Again we agree that this was error. As before, we test the error for harm. Paraphrasing *Neder v. United States*, 527 U.S. 1, 18 (1999), is it clear beyond a reasonable doubt that a rational court would have found that Appellant committed an offensive touching absent the instruction that "a person who engages in unprotected sexual intercourse with another person, knowing he is HIV positive, without informing his sexual partner and that his [sic] HIV and without using a condom has committed an offensive touching of that person"? In other words, is it clear beyond a reasonable doubt that a rational court would have agreed with the quoted instruction on its own?

During the incident, KB consented to Appellant's touching her. This consent would be vitiated by lack of knowledge of a fact that, if known, would have led KB to withhold her consent; her lack of knowledge, if anything, is what rendered the touching offensive. Here is the heart of the issue. Is it clear beyond a reasonable doubt that a rational court would have found that KB would not have consented to unprotected intercourse if she had known Appellant was HIV-positive? We think it is. We find that the military judge's error in instructing on the offensive touching issue was harmless.[2]

Accordingly, we may affirm a finding of guilty of the lesser included offense of assault consummated by a battery under Charge I.

**Maximum sentence**

The maximum sentence for assault consummated by a battery would have been confinement for six months, forfeiture of all pay and allowances, and dismissal.[3] As noted above, the military judge determined that the maximum sentence for Charge II was confinement for six months, forfeiture of all pay and allowances, and dismissal, and treated the two charges as multiplicious for sentencing. We are bound by these rulings. Hence the maximum sentence for this case is confinement for six months, forfeiture of all pay and allowances, and dismissal, instead of confinement for three years, forfeiture of all pay and allowances, and dismissal.

---

[2] Arguably Appellant waived this issue by not objecting at trial to that portion of the instructions. At trial, during the colloquy on instructions, the following dialog took place between civilian defense counsel and the military judge:

> DC: Page 2 of your instructions, we object to the entirety of the final paragraph that begins, "You are advised…" and ends in "…bodily harm."

> MJ: Okay. Just for the record, that paragraph reads, "You are advised that a person who engages in unprotected sexual intercourse with another person knowing he is HIV positive without informing his sexual partner that he has HIV and without using a condom has committed an offensive touching of that person." Is that line an inaccurate statement of the law?

> DC: We do not contend that that is an inaccurate statement. We just contend that that read with the next line is what makes the entire paragraph objectionable. … Our specific objection is with the next line, sir.

(R. at 607-08.) The fact that Appellant made this concession at trial lends weight to the argument that including the specified line in the instructions was harmless. Even trial defense counsel did not think it would make any difference.

[3] Manual for Courts-Martial (MCM), Pt. IV, ¶54.e.(2), United States (2005 ed.); Rule for Courts-Martial 1003(b)(8)(A), Manual for Courts-Martial, United States (2005 ed.). The 2002 edition of the MCM was in effect at trial. However, the versions of the relevant provisions in both the 2002 and 2005 editions are identical.

**Reassessment of sentence**

Since the sentence adjudged – dismissal, forfeiture of all pay and allowances, and confinement for nine months – exceeded the sentence we now find to be the maximum, the sentence must be reduced. We may affirm only so much of the sentence as we believe the court would have adjudged in the absence of the error; if we are unable to determine what that would have been, we must order a rehearing on sentence. *United States v. Sales*, 22 M.J. 305 (C.M.A. 1986). We are convinced that the court would have sentenced Appellant to no less than dismissal, forfeiture of all pay and allowances for four months, and confinement for four months.

**Decision**

We have reviewed the record in accordance with Article 66, UCMJ, and, as indicated, have determined that the finding of guilty to the specification of aggravated assault under Charge I cannot stand. We affirm a finding of guilty to the lesser included offense of assault consummated by a battery. The remaining findings of guilty are determined to be correct in law and fact and are affirmed. We reassess the sentence in light of the reduced findings of guilty, and conclude that the court, on the reduced findings, would not have imposed a sentence of less than confinement for four months, forfeiture of all pay and allowances for four months, and dismissal. We determine that that sentence is appropriate and should be approved. Accordingly, the sentence of confinement for four months, forfeiture of all pay and allowances for four months, and dismissal is affirmed.

Chief Judge BAUM and Judge KANTOR concur.



For the Court,

Jane R. Lim
Clerk of the Court