In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-05-162 CR


____________________



WILBERT JAMES TEAL, Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the 217th District Court


Angelina County, Texas


Trial Cause No. CR-24,863






OPINION ON REMAND


 This cause was remanded for us to consider the original appellate issues of appellant
Wilbert James Teal raising the lack of legally and factually sufficient evidence to sustain the
verdict and error in the jury charge. See Teal v. State, 230 S.W.3d 172, 182 (Tex. Crim. App.
2007). Teal was convicted by a jury for hindering apprehension and assessed two years of
confinement in the Texas Department of Criminal Justice, Correctional Institutions Division
by the trial court. 

 In reviewing a legal sufficiency challenge, we examine all the evidence in the light
most favorable to the verdict and determine whether, based on that evidence and reasonable
inferences therefrom, a rational trier of fact could have found the essential elements of the
offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781,
61 L.Ed.2d 560 (1979); Hooper v. State, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007); Lane v.
State, 151 S.W.3d 188, 191-92 (Tex. Crim. App. 2004). This review encompasses all of the
evidence, whether properly or improperly admitted. See Conner v. State, 67 S.W.3d 192, 197
(Tex. Crim. App. 2001). Under this standard, the factfinder is left with the responsibility to
resolve any conflicts in the testimony, to weigh the probative value of the evidence, and to
draw reasonable inferences from basic to ultimate facts. See Hooper, 214 S.W.3d at 914. 
As factfinder, the jury is the sole judge of the credibility of the witnesses and of the weight
to be given their testimony. Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979). Thus,
the jury is free to accept or reject any or all of a witness's testimony. See Margraves v. State,
34 S.W.3d 912, 919 (Tex. Crim. App. 2000). Each fact need not point directly and
independently to the defendant's guilt as long as the cumulative force of all the incriminating
circumstances is sufficient to support the conviction. Hooper, 214 S.W.3d at 13. 
Circumstantial evidence has the same probative value as direct evidence in establishing the
guilt of an accused, and circumstantial evidence alone can be sufficient to establish guilt. Id. 
The same standard of appellate review is used for both direct and circumstantial evidence. 
Id. 

 Jackson v. Virginia expresses the federal constitutional due process standard by which
reviewing courts measure evidentiary sufficiency. Fuller v. State, 73 S.W.3d 250, 252 (Tex.
Crim. App. 2002). Under Jackson's due process standard, evidentiary sufficiency is
measured against the "'substantive elements of the criminal offense as defined by state law.'" 
Id. (quoting Jackson, 443 U.S. at 324 n.16). In Texas, evidentiary sufficiency is measured
against the "'elements of the offense as defined by the hypothetically correct jury charge for
the case' in all sufficiency cases." Id. (quoting Gollihar v. State, 46 S.W.3d 243, 252 (Tex.
Crim. App. 2001); Malik v. State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). 

 Under a factual sufficiency challenge, we review the evidence in a neutral light. 
Roberts v. State, 220 S.W.3d 521, 524 (Tex. Crim. App.), cert. denied, ___ U.S. ___, 2007
WL 2139364 (Oct. 1, 2007). 

 Evidence can be factually insufficient in one of two ways: (1) when the
evidence supporting the verdict is so weak that the verdict seems clearly wrong
and manifestly unjust, and (2) when the supporting evidence is outweighed by
the great weight and preponderance of the contrary evidence so as to render the
verdict clearly wrong and manifestly unjust. 


Id. (citing Watson v. State, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006); Johnson v.
State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000)). A reviewing court may not reverse for
factual insufficiency if "'the greater weight and preponderance of the evidence actually
favors conviction.'" Id. (quoting Watson, 204 S.W.3d at 417). While a reviewing court may
"second-guess the jury to a limited degree, the review should still be deferential, with a high
level of skepticism about the jury's verdict required before a reversal can occur." Id. (citing
Watson, 204 S.W.3d at 417; Cain v. State, 958 S.W.2d 404, 407, 410 (Tex. Crim. App.
1997)). 

 In pertinent part, a person commits hindering apprehension if, with intent to hinder
the arrest, prosecution, conviction, or punishment of another for an offense, he: (1) harbors
or conceals the other; (2) provides or aids in providing the other with any means of avoiding
arrest or effecting escape; or (3) warns the other of impending discovery or apprehension. 
See Act of May 29, 1995, 74th Leg., R.S., ch. 318, § 11, sec. 38.05, 1995 Tex. Gen. Laws
2734, 2739, amended by Act of May 27, 2005, 79th Leg., R.S., ch. 607, § 1, sec. 38.05(a),
2005 Tex. Gen. Laws 1558 (current version at Tex. Pen. Code Ann. § 38.05 (Vernon Supp.
2006)). (1) The offense is a third degree felony if, inter alia, the defendant knew that the other
person is under arrest for, charged with, or convicted of a felony. Id. 

 The facts of the case were adequately described by the Court of Criminal Appeals in
its opinion, which reads as follows:

 On June 8, 2004, Lufkin police received a Crimestopper's tip that a fugitive,
Curtis Brown, was staying at appellant's house. When police officers arrived
at his house, appellant was sitting on the front porch with his front door open. 
Officer Burfine told appellant that they were looking for Brown, a fugitive
with outstanding parole violator and sex offender warrants. He informed
appellant that both of these were felony warrants. Officer Burfine told
appellant that they had information that Brown was in the house. Appellant
said that he had seen Brown the night before, but that he had not seen Brown
that day. He repeatedly denied that Brown was in the house, and he refused
to allow the police to enter his house.


 Meanwhile, Officer Smith heard noises from the rear of the house, so he
went to check and discovered Brown attempting to flee. Officer Smith
arrested Brown. The officers also found another man who had an outstanding
sexual assault warrant when they searched appellant's house.


Teal, 230 S.W.3d at 173-74. The record also includes testimony from Curtis Brown, who
was called by Teal as the lone witness for the defense. Brown testified that he had known
Teal for "40-plus years," and the two had grown up together. Brown admitted that he came
to Teal's residence on the day in question at about 7:30 or 8:00 a.m. in the morning. Brown
indicated that after he had been at Teal's house for about thirty-five or forty minutes, he went
out the back door of the house to get some water as Teal's house was without running water. 
At the time Brown exited the house, Teal and another man, Jimmy, were in the living-room,
but when Brown came back inside, Teal and Jimmy were on the front porch. Brown stated
that he did not alert Teal that he had re-entered the house nor did Brown join Teal and Jimmy
on the front porch. Brown indicated it was at that point that he spotted the Lufkin Police
officers and then attempted to make his escape out the back door of Teal's house, at which
time he was arrested. 

 Brown testified that he had not spent the night at Teal's house the night before. 
Brown admitted he was aware of the outstanding arrest warrants and also admitted he was
attempting to avoid being arrested at the time he exited the back door after becoming aware
of the presence of the police officers. Brown stated that prior to his arrest he had not
informed Teal of his status as a fugitive. Brown's presence at Teal's house on the morning
in question was clarified during cross-examination by the State, viz: 

 Q.[State] Mr. Brown, had you been over to Mr. Teal's residence the night
before?


 A.[Brown] I was in the area but not at his house.


 . . . .


 Q. Okay. When had you been over there previously?


 A. Probably a week prior to that.


 Q. Okay. A week prior. Okay. But now you said you went - - you used the
back door when you went into the house?


 A. Correct.


 Q. Was that every time you went into the house?


 A. This particular day?


 Q. Yes.


 A. Yes, sir.


 Q. Why didn't you use the front door?


 A. Because that's the way he took me in, through the back door.


 . . . .


 Q. Did you have - - did you have permission to just sort of come and go out
of Mr. Teal's house or - - 


 A. Well, not just say, okay, just do what you want to do. 


 Q. Uh-huh.


 A. I had left - - I guess it was just unspoken rule that I needed some water - -
or if you needed water, there wasn't any running water inside; so you just went
outside to get it.


 Q. Okay. But you were a guest at the house, right?


 A. That's right.


 Q. He knew that you were there and had been visiting with them?


 A. (Moving head up and down.)


 . . . .


 Q. Okay. Where did you see Mr. Teal before you went to his house?


 A. On the streets in the back, the back street - - 


 Q. Okay.


 A. - - when I was coming through. 


 . . . .


 Q. Okay. Did you and Mr. Teal have any discussion about you going and
getting water? Did y'all talk about that?


 A. No, sir.


 Q. Did you say hey - - where did you go to get water?


 A. It's a house that's adjacent to that with a fountain - - a water spigot at the
back of the house. I went there to get water.


 Q. Okay. Did you ever offer to get anybody else water or did anybody else
say - - 


 A. I was thirsty, sir.


 Q. But you didn't talk about going and getting water?


 A. No, sir.


 Q. Okay. And I understand that you were thirsty. I was just curious if maybe
you had gone to a store or - - 


 A. No, sir. No, sir.


 Q. You just went to the back of the house to get it?


 A. Yes, sir. 


 Q. How long were you gone to get the water?


 A. Three, four minutes.


 Q. Okay. So it had been three or four minutes you had been talking with Mr.
Teal and Jimmy?


 A. That's correct.


 Q. Okay. Where were you-all - - were you all inside the house before you
went to get the water?


 A. Yes, sir, we were.


 Q. Okay. Where at? What part of the house?


 A. In the living room.


 . . . .


 Q. When you got back to the house and before you saw the patrol cars, did
you know they were out on the porch?


 A. You couldn't tell - - when you come through the back door, there's a
hallway when you come through the little back - - going up the hallway, you
can see the front porch; and I saw the patrol cars out there. That's when I
turned and come back. I didn't see Mr. Teal or Jimmy. 


 Q. Okay. So you didn't know if they were maybe in another part of the house
or on the porch?


 A. I didn't take time to take notice. I ran. 


 Brown's testimony makes clear that he had not spent the night at Teal's house, that
he had been escorted into the house by Teal earlier that morning, and that he had been gone
from Teal's presence for only three to four minutes to get water when the Lufkin Police
officers arrived and began questioning Teal as to his knowledge of Brown's whereabouts. 
The record also makes clear that while Teal may not have been aware of Brown's fugitive
status when the two got together earlier that morning, Officer Burfine explained to Teal that
Brown was a fugitive, that Brown "had a parole warrant and a sex offender violation warrant,
which were both felonies," and that the police believed Brown was inside Teal's house. In
the face of this information, Teal denied having seen Brown "that day," and further told
Burfine "the last time he'd seen [Brown] was the night before[.]" Teal continued to deny
Brown's presence at Teal's house even after Teal was informed that lying about Brown's
presence was a criminal offense. Therefore, from the facts and circumstances presented, we
find that any rational trier of fact could have found each of the essential elements of the
offense proven beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. at 319; Lane,
151 S.W.3d at 191-92. We additionally find that, when examined in a neutral light, the
evidence strongly supports the verdict, and that the incriminating evidence, both direct and
circumstantial, is not so outweighed by contrary evidence as to make the verdict clearly
wrong and manifestly unjust. Roberts, 220 S.W.3d at 524. Issues one and two are overruled.

 Teal's final three issues essentially complain of error in the jury charge because of the
absence of an essential element of the offense. As was the situation with Teal's indictment,
the jury charge failed to include the jurisdictional element that Teal had knowledge that
Curtis Brown was a felony fugitive. See Teal, 230 S.W.3d at 181. Teal's trial counsel raised
the following objection when presented with the trial court's charge to the jury: 

 [Trial Counsel]: Yes, Your Honor, I do object to Paragraph 3. It does
not contain the necessary requirement that the jury find that my client was
operating with knowledge that he was harboring somebody who had a felony
warrant as called for by 38.05(C), which is what it takes to raise - - the element
that it takes to raise this matter up from a Class A misdemeanor to a third-degree felony.

 THE COURT: Okay. Your objection's overruled.


 This objection was sufficient to place the trial court on notice of the error. See Ovalle
v. State, 13 S.W.3d 774, 785-86 (Tex. Crim. App. 2000). As the indictment was defective
for having omitted one of the two mens rea elements that elevated Teal's offense from a
misdemeanor to a felony, see Teal, 230 S.W.3d at 181-82, so was the jury charge that omitted
the same element, as it is error for a trial court to fail to give "'a written charge distinctly
setting forth the law applicable to the case[.]'" See Sanchez v. State, 209 S.W.3d 117, 121
(Tex. Crim. App. 2006) (quoting Tex. Code Crim. Proc. Ann. art. 36.14 (Vernon 2007). 
Moreover, culpable mental states are "elemental," such that failure to instruct a jury to find
every necessary culpable mental state constitutes jury charge error. See Sanchez, 209 S.W.3d
at 122 n.38. Under Almanza v. State, 686 S.W.2d 157 (Tex. Crim. App. 1984) (opinion on
reh'g), we address a challenge to the jury charge by first determining whether the charge does
indeed contain error. Arline v. State, 721 S.W.2d 348, 351 (Tex. Crim. App. 1986). Second,
we determine whether sufficient harm was caused by the error to require reversal. Id. (citing
Almanza, 686 S.W.2d at 171). As we have already determined Teal's jury instructions
contained error, we move on to whether the error necessitates reversal of his conviction. 

 The degree of harm necessary for reversal depends on whether error was preserved. 
Id. Error that is properly preserved requires reversal "as long as the error is not harmless." 
Almanza, 686 S.W.2d at 171. This has been interpreted to mean that any harm, regardless
of degree, is sufficient to require reversal. Arline, 721 S.W.2d at 351. The "harm" involved
here, however, must be "actual," and not "theoretical." See id. When conducting a harm
analysis because of jury charge error, the reviewing court may consider (1) the charge itself;
(2) the state of the evidence including contested issues and the weight of the probative
evidence; (3) arguments of counsel; and (4) any other relevant information revealed by the
record of the trial as a whole. Hutch v. State, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996). 

 When an essential element is omitted from the trial court's charge and, therefore, not
considered by the jury in reaching its verdict, the federal constitution is implicated because
of the defendant's Sixth Amendment right to a jury trial. See Prystash v. State, 3 S.W.3d
522, 538 (Tex. Crim. App. 1999) (citing United States v. Gaudin, 515 U.S. 506, 510-11, 115
S.Ct. 2310, 132 L.Ed.2d 444 (1995)). Nevertheless, "an instruction that omits an element
of the offense does not necessarily render a criminal trial fundamentally unfair or an
unreliable vehicle for determining guilt or innocence." Neder v. United States, 527 U.S. 1,
9, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999); see Olivas v. State, 202 S.W.3d 137, 143 (Tex.
Crim. App. 2006). This is not as counterintuitive as it appears at first blush because, as the
Supreme Court notes, "[w]e have recognized that 'most constitutional errors can be
harmless.' Fulminante, supra, at 306, 111 S.Ct. 1246.[ (2)] '[I]f the defendant had counsel and
was tried by an impartial adjudicator, there is a strong presumption that any other
[constitutional] errors that may have occurred are subject to harmless-error analysis.' Rose
v. Clark, 478 U.S. 570, 579, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986)." Neder, 527 U.S. at 8.

 In Neder, the trial court erroneously refused to submit the essential element of
"materiality" to the jury at the conclusion of a criminal trial alleging tax fraud. Id. at 4. In
addressing whether this type of error is subject to a harmless error analysis, the Court in
Sullivan v. Louisiana, 508 U.S. 275, 281, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993) noted that,
unlike a defective "reasonable doubt" instruction which "vitiates all the jury's findings," and
produces "consequences that are necessarily unquantifiable and indeterminate," a jury charge
omitting a single element does not vitiate all the jury's findings. Id. at 281-82, 113 S.Ct.
2078. Additionally in Neder, the Supreme Court's extensive "harmless-error" precedent also
led it to conclude that the omitted-element jury charge error at issue there was subject to
review for harmless error. See Neder, 527 U.S. at 11-13; California v. Roy, 519 U.S. 2, 117
S.Ct. 337, 136 L.Ed.2d 266 (1996); Carella v. California, 491 U.S. 263, 109 S.Ct. 2419, 105
L.Ed.2d 218 (1989); Pope v. Illinois, 481 U.S. 497, 107 S.Ct. 1918, 95 L.Ed.2d 439 (1987). 
When such jury charge error has occurred, the Court noted that reviewing courts will often
be required to conduct a thorough examination of the record for harm. Neder, 527 U.S. at
19. 

 If, at the end of that examination, the court cannot conclude beyond a
reasonable doubt that the jury verdict would have been the same absent the
error - for example, where the defendant contested the omitted element and
raised evidence sufficient to support a contrary finding - it should not find the
error harmless.

Id.

 As noted above, the Court of Criminal Appeals has prescribed a similar examination
of the record for reviewing courts to undertake when jury charge error is raised on appeal. 
Hutch, 922 S.W.2d at 171; see also Olivas, 202 S.W.3d at 144. The jury charge in the instant
case is quite abbreviated, with two abstract definitions and the application paragraph all
appearing on the first page. The charge does not contain any language so as to permit the
jury to find knowledge by Teal of Curtis Brown's felony fugitive status. However, the
application paragraph does identify Brown as a fugitive from the felony offense of "Failure
to Comply with Registration as a Sex Offender." With regard to the state of the evidence,
Officer Burfine's testimony directly established the fact that Teal was made aware of
Brown's felony fugitive status. Nevertheless, Teal continuously denied Brown's presence
at Teal's home up until the point Officer Smith brought Brown to the front porch area
following Brown's attempted escape out the back door of Teal's home. Although Teal's
appellate brief describes the evidence regarding Teal's knowledge of Brown's presence at
the house and of Brown's felony fugitive status as "meager," the record indicates otherwise. 
 Closing arguments of both counsel were neither inflammatory nor hyperbolic. Both
arguments were confined to the record-evidence. At one point, the State candidly opined that
when Teal and Brown initially met up on the morning in question Teal probably did not
know of Brown's felony fugitive status, and that Brown probably did not tell Teal about it. 
However, the State reminded the jury that Teal's awareness of Brown's legal problems
changed with the arrival of the police officers, who informed Teal that Brown was a wanted
felon. The State also reminded the jury that Brown testified he had been visiting with Teal
and left the house for only three to four minutes to get water, and when the police arrived
shortly thereafter, Teal told the officers he had not seen Brown since the previous evening,
and persisted in this story even after being informed of Brown's felony fugitive status. 
Teal's trial counsel limited his closing remarks to attempting to raise reasonable doubt of
Teal's awareness of Brown's presence inside the house at the moment Teal was questioned
by Officer Burfine. No further pertinent information can be gleaned from the trial record. 
The facts and circumstances were not complicated. It was simply up to the jury whether to
believe the State's theory of Teal's guilt, or to believe the defensive strategy posited by
Teal's trial counsel. 

 After an examination of the record in its entirety, we are confident that the erroneous
jury charge caused no actual harm to Teal. See Ovalle, 13 S.W.3d at 786-87. Ultimately, the
erroneous jury charge was not calculated to injure the rights of Teal, and the record does not
indicate that Teal's trial was anything other than fair and impartial. See id. Additionally, the
record contains no evidence or reasonable inference that could rationally lead to a contrary
finding with respect to the omitted element. See Neder, 527 U.S. at 19. We therefore
overrule issues three, four, and five, and we affirm the judgment of the trial court. 

 AFFIRMED. 

 
 __________________________________

 CHARLES KREGER

 Justice


Submitted on May 1, 2007

Opinion Delivered November 28, 2007

Do not publish


Before McKeithen, C.J., Gaultney and Kreger, JJ.

DISSENTING OPINION



 The omission of a mens rea element of an offense from the jury charge renders the
charge defective. Defendant objected to the omission. Brown testified he did not tell
defendant of his fugitive status. The jury was not required to accept all of Officer Burfine's
testimony. The charge error was not harmless given the disputed issue. I respectfully
dissent. I would remand for a new trial with a proper jury charge. 

 _________________________________

 DAVID GAULTNEY

 Justice


Dissent Delivered

November 28, 2007
1. The code provision was amended in 2005 in a manner that does not affect Teal's
prosecution. See Act of May 27, 2005, 79th Leg., R.S., ch. 607, § 1, sec. 38.05(a), 2005
Tex. Gen. Laws 1558 (current version at Tex. Pen. Code Ann. § 38.05(a) (Vernon Supp.
2006)). 
2. Arizona v. Fulminante, 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991).