**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 14-4606/14-4609
_____

AURELIO RAY CAGNO,
                    Appellant in 14-4609

v.

ADMINISTRATOR, NEW JERSEY STATE PRISON;
ATTORNEY GENERAL OF THE STATE OF NEW JERSEY,
                    Appellants in 14-4606
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 3-13-cv-01551)
District Judge:  Honorable Anne E. Thompson
_____

Argued November 6, 2015

Before:  FUENTES, JORDAN, and VANASKIE, <u>Circuit Judges</u>

(Filed: February 24, 2016)


Steven A. Yomtov, Esq. **[ARGUED]**
Office of Attorney General of New Jersey
Division of Criminal Justice
P.O. Box 086
25 Market Street
Richard J. Hughes Justice Complex
Trenton, NJ 08625

*Counsel for Appellants/Cross-Appellees Administrator, New Jersey State Prison et al.*

James K. Smith, Jr., Esq. **[ARGUED]**
Office of Public Defender
Appellate Section
31 Clinton Street
P.O. Box 46003
Newark, NJ 07101

*Counsel for Appellee/Cross-Appellant Aurelio Ray Cagno*

_____

OPINION[*]

_____

FUENTES, <u>Circuit Judge</u>:

Aurelio Ray Cagno is currently serving a life sentence in New Jersey state prison for his 2004 convictions for murder and racketeering conspiracy. He seeks federal habeas relief under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. He raises three claims: (1) his Sixth Amendment confrontation rights were violated when the State was permitted to present evidence of a co-conspirator's refusal to testify to prove the continuing vitality of the conspiracy; (2) his Fourteenth Amendment due process rights were violated when the State failed to prove an overt act in furtherance of the conspiracy during the requisite limitations period; and (3) his Fourteenth Amendment due process rights were violated when the jury instructions improperly shifted onto him the burden of proving the conspiracy had

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

terminated. Cagno contends that the improperly admitted evidence relating to the conspiracy charge was so prejudicial that his murder conviction must also be reversed.

The District Court granted in part and denied in part Cagno's habeas petition, and the parties now cross-appeal accordingly. Because we conclude that the New Jersey Supreme Court's decision rejecting Cagno's constitutional claims was neither contrary to, nor involved an unreasonable application of, clearly established federal law, we will affirm in part and reverse in part the District Court's judgment. Cagno is not entitled to federal habeas relief.

## I. BACKGROUND

### A. First Indictment and Trial

In February 2000, Cagno was charged in New Jersey state court with the murder of James Randazzo and first degree racketeering (RICO) conspiracy. The State alleged that Cagno was a made member of the New Jersey crew of the Colombo crime family of La Cosa Nostra, a nation-wide network of enterprises, or "families," devoted to generating profits for its members through criminal activities—also known as the mafia. The indictment charged Cagno with conspiracy to participate in the enterprise through a pattern of racketeering activity, including conspiracy to commit murder, loan sharking, bookmaking, possession and distribution of gambling equipment, and extortion. Salvatore Lombardino was named as an unindicted co-conspirator.

The indictment identified the objectives of the conspiracy as to: (1) obtain money; (2) conceal and perpetuate the existence of the enterprise; (3) continue the activities of

the enterprise through an organized chain of command; and (4) intimidate those outside the enterprise with violence and threats of violence.

The indictment alleged four overt acts in furtherance of the conspiracy: (1) the November 1988 murder of Jimmy Angellino; (2) the May 1993 murder of James Randazzo, in which Lombardino and Cagno's brother, Rocco, also allegedly participated; (3) the January 1994 conversation between Lombardino and Rocco regarding meeting with Cagno to develop an alibi for the Randazzo murder; and (4) Lombardino's refusal before a federal grand jury in May 1998 and at a deposition in October 1998 to answer any questions regarding Cagno's involvement in the Randazzo murder, despite having been granted immunity.

Cagno's first trial began in May 2002. Rocco, who decided to cooperate with law enforcement, testified against his brother.[1] Lombardino was called to appear as a witness, and was put on the stand outside the jury's presence on June 13 and June 18, 2002. On both days, Lombardino invoked his Fifth Amendment privilege not to incriminate himself, was thereafter granted immunity, and continued to refuse to answer any questions. He was eventually held in contempt of court. The case was tried to conclusion, but the jury was unable to reach a verdict on either count.

**B. Superseding Indictment and Second Trial**

On January 2, 2003, the State obtained a superseding indictment against Cagno. It contained the same charges and allegations, but removed the fourth overt act in

---

[1] Rocco was placed in the federal witness protection program.

4

furtherance of the conspiracy, and added two new overt acts: Lombardino's refusals to testify on June 13 and June 18, 2002 in Cagno's first trial.

Cagno's trial under the superseding indictment began in January 2004. Rocco again testified against his brother. Lombardino again was called to testify outside the presence of the jury. Again he invoked the Fifth Amendment, was granted immunity, continued to refuse to answer questions, and was held in contempt. Over Cagno's objections, the State called two witnesses who had been present in the courtroom on June 13 and June 18, 2002. Those witnesses, FBI Special Agent Stephen Kodak and Sheriff's Officer Benjamin Rivera-Estrada, recounted for the jury what they observed at those proceedings.[2]

According to Agent Kodak, when Lombardino entered the courtroom at the June 13th proceeding, he looked at Cagno and the two men smiled at each other. When Lombardino exited the courtroom, after refusing to answer any questions and being held in contempt, he gave a thumbs up sign to Cagno, said "hang in there kid," smiled, and winked. Cagno smiled back. Agent Kodak testified that at the June 18th proceeding, after Lombardino again refused to answer questions, he gave Cagno another thumbs up sign as he left the courtroom. Officer Rivera-Estrada testified that at the June 18th proceeding, as Lombardino exited the courtroom, he looked at Cagno, "gave him kind of a small smile, wink and head nod with a thumbs up sign," and said "keep your head up,

---

[2] Both witnesses referred to "prior proceedings" as opposed to a trial, so the jury was kept unaware that Lombardino had refused to testify at Cagno's first trial.

5

kid. Keep it up, kid or words to that effect." J.A. 2410. Cagno smiled and nodded in response.

The State argued that, in addition to other evidence, the evidence of Lombardino's refusal to testify and his remarks and gestures of encouragement to Cagno demonstrated that the conspiracy—specifically, La Cosa Nostra's code of silence, or "omerta"—continued into the statute of limitations period, that is, within five years of the superseding indictment being filed.[3] The State emphasized during summation that Lombardino had no legal right to refuse to testify. During deliberations, the jury inquired about the circumstances surrounding Lombardino's refusal to testify. With the parties' consent, the court advised the jury that Lombardino had been granted immunity on both occasions. The jury found Cagno guilty of both murder and racketeering conspiracy.

## C. New Jersey Supreme Court Decision

On direct appeal, Cagno raised three constitutional arguments relevant here, all of which were rejected by the New Jersey Supreme Court.

First, the New Jersey Supreme Court rejected Cagno's argument that allowing State witnesses to testify as to Lombardino's prior refusals to testify violated his confrontation rights. Applying *Crawford v. Washington*, 541 U.S. 36 (2004), the Court held that the challenged evidence was not "testimonial" in nature, and thus there was no Confrontation Clause violation. The Court concluded that how to interpret the evidence of Lombardino's refusal to testify and his gestures/remarks to Cagno was properly left to the jury.

---

[3] N.J. Stat. Ann. § 2C:1-6(b)(1).

6

Second, the New Jersey Supreme Court rejected Cagno's argument that his due process rights were violated when the State failed to prove beyond a reasonable doubt an overt act in furtherance of the conspiracy within the five-year limitations period. The Court reasoned that direct evidence of an overt act was not required, since the totality of the evidence permitted the jury to infer that the conspiracy continued into the limitations period. The Court explained that Cagno was conflating a RICO conspiracy charge with a RICO substantive charge.

Third, the New Jersey Supreme Court rejected Cagno's argument that the jury instructions suggested that Cagno had to prove the conspiracy had terminated, thereby improperly allocating to him the burden of proving the prosecution was time-barred. The Court concluded that the burden always remained with the State to prove beyond a reasonable doubt either an overt act in furtherance of the conspiracy or some other evidence of the vitality of the conspiracy into the limitations period.

Cagno thereafter filed a petition for certiorari in the United States Supreme Court, which was denied.[4] Cagno's habeas petition followed.[5]

**D. District Court Opinion**

The District Court concluded that Cagno was entitled to habeas relief on his confrontation claim and his statute of limitations due process claim. The District Court held that the New Jersey Supreme Court decision was contrary to *Douglas v. Alabama*,

---

[4] *Cagno v. New Jersey*, 133 S. Ct. 877 (2013).

[5] A federal court may not grant habeas relief unless the state court adjudication of the claim at issue "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

380 U.S. 415 (1965) and *Namet v. United States*, 373 U.S. 179 (1963). Together, these cases establish that a Confrontation Clause violation occurs when inferences from a witness's refusal to answer added "critical weight" to the prosecution's case in a form not subject to cross-examination. The District Court was "convinced" that evidence of Lombardino's refusal to testify added "critical weight" to the State's case, since in Cagno's first trial this evidence was not introduced and a hung jury resulted. The District Court reasoned that because this evidence was the *only* evidence offered to show that the RICO conspiracy continued into the limitations period, the State did not prove beyond a reasonable doubt the statute of limitations element of conspiracy.

The District Court found unpersuasive, however, Cagno's burden-shifting jury instructions argument. It noted that, "at every turn," the trial court emphasized that the State had the burden of proving an overt act in furtherance of the conspiracy, or that the conspiracy had continuing vitality into the limitations period.

This cross-appeal followed.[6]

## II. DISCUSSION

### A. Confrontation Clause Claim

Cagno claims that the introduction of State witness testimony regarding Lombardino's previous refusals to testify violated his confrontation rights because this

---

[6] The District Court had jurisdiction over Cagno's habeas petition pursuant to 28 U.S.C. §§ 2241 and 2254. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291. Because the District Court did not hold an evidentiary hearing and based its review on the state court record, our review is plenary. *Eley v. Erickson*, 712 F.3d 837, 845 (3d Cir. 2013).

evidence was used against him and he was never afforded the opportunity to cross-examine Lombardino.

The Sixth Amendment provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." In *Crawford*, the Supreme Court explained that the Confrontation Clause prohibits the introduction of out-of-court, testimonial statements by a non-testifying witness, unless the witness is unavailable and the defendant had a prior opportunity to cross-examine them.[7] While the Court declined to provide a comprehensive definition of the term "testimonial," it agreed that several definitions share the same "common nucleus": "*ex parte* in-court testimony or its functional equivalent," "extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions," and "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial."[8] Thus, a threshold question in a Confrontation Clause analysis is whether the out-of-court statement is "testimonial," and, for that matter, whether it is indeed a statement.

Applying *Crawford*, the New Jersey Supreme Court concluded that the contested evidence—Lombardino's refusal to testify—was not testimonial. It reasoned that the State witnesses did not relate an out-of-court statement made by Lombardino, but rather recounted for the jury their own observations of Lombardino's conduct and gestures, on which they were closely cross-examined. Thus, Lombardino's refusal to testify, in itself,

---

[7] *Crawford*, 541 U.S. at 53-54.
[8] *Id.* at 51-52 (citations omitted) (internal quotation marks omitted).

9

was not a testimonial statement that could be tested by cross-examination. It was an act. This conclusion is neither contrary to nor involves an unreasonable application of *Crawford*.

Cagno argues that Lombardino's refusal to testify was produced by the prosecution "with an eye toward trial," and that inferences therefrom added "critical weight" to the prosecution's case. Cagno Br. 41, 50. The District Court agreed and concluded that allowing this evidence in was contrary to *Namet* and *Douglas*.[9] We disagree.

At the outset, we note that both *Namet* and *Douglas* were decided well before *Crawford*. We also note that *Namet* did not involve constitutional claims.[10] All the Court did in *Namet* was identify two situations in which introduction of a witness's refusal to testify constitutes reversible trial error: (1) when the prosecution "makes a conscious and flagrant attempt to build its case out of inferences arising from use of the

---

[9] The State contends that Cagno's confrontation claim was not properly exhausted because the issue of Lombardino's refusal to testify was not "fairly presented" to the state courts in the context of violating *Douglas* or *Namet*, but rather was "primarily anchored" as a *Crawford* violation. Irrespective of whether the State failed to timely raise an exhaustion defense, the "fairly presented" requirement only requires a habeas petitioner to "present [the] federal claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted." *Greene v. Palakovich*, 606 F.3d 85, 93 (3d Cir. 2010) (alteration in original) (internal quotation marks omitted). Cagno argued in state court, as he does now, that the introduction of Lombardino's refusal to testify as substantive evidence against him was a violation of his Sixth Amendment right to confrontation. Both the New Jersey Superior Court, Appellate Division and the New Jersey Supreme Court acknowledged Cagno's confrontation claim and ruled on it. Nothing further was required.

[10] *See Namet*, 373 U.S. at 185 ("[W]e emphasize at the outset what this case does not involve. No constitutional issues of any kind are presented. . . . All that this case involves, in short, is a claim of evidentiary trial error.").

10

testimonial privilege," or (2) when "inferences from a witness' refusal to answer added critical weight to the prosecution's case in a form not subject to cross-examination, and thus unfairly prejudiced the defendant."[11]

*Douglas*, however, built on *Namet* specifically in the Sixth Amendment context.[12] There, the defendant and an accomplice were tried separately for assault with intent to commit murder. The accomplice was tried first and found guilty. At the defendant's trial, the prosecution called the accomplice to the stand to inquire about a prior confession he had made implicating the defendant. The accomplice invoked his Fifth Amendment privilege and refused to answer any questions. Under the guise of refreshing a hostile witness's recollection, the prosecutor purported to read from the accomplice's confession, pausing every few seconds to ask if the statement was his. Each time, the accomplice asserted the privilege and refused to answer. Because the statement was only imputed to and not admitted by him, the accomplice was not subject to cross-examination by the defendant. Three law enforcement officers then identified the document as a confession that was signed by the accomplice.[13]

The Supreme Court explained that, while the prosecutor's reading of the accomplice's alleged confession and the accomplice's corresponding refusals to answer were "not technically testimony," the combination created a situation in which the jury might properly infer that the accomplice in fact made the statement and that it was true.[14]

---

[11] *Id.* at 186-87.
[12] *Douglas*, 380 U.S. 415.
[13] *Id.* at 416-17.
[14] *Id.* at 419.

Because the accomplice's confession formed the "crucial link" in proving both the defendant's actions and his requisite intent to murder, the Court held that inferences from the accomplice's refusal to answer added "critical weight" to the prosecution's case. Under these circumstances, the Court concluded, the defendant's confrontation rights were violated.[15]

The circumstances here are much different. Lombardino was not on the stand at Cagno's trial refusing to testify in front of the jury. Rather, two officers were on the stand testifying as to Lombardino's refusal to testify at "prior proceedings." In *Douglas*, the prosecutor essentially read the accomplice's prior confession to the jury under the guise of refreshing the accomplice's recollection on the stand. Here, nothing of that sort occurred. And, unlike the accomplice in *Douglas*, Lombardino had been granted immunity and thus had no legal basis for refusing to testify.[16]

Moreover, contrary to the District Court's finding, evidence of Lombardino's refusal to testify was not the *only* evidence presented to demonstrate the continuing vitality of the conspiracy. Rocco also testified, and there was various other evidence about the structure and operations of La Cosa Nostra. Thus, evidence of Lombardino's refusal to testify did not necessarily form the "crucial link" to Cagno's guilt like the

---

[15] *Id.* at 419-20.

[16] While the Court in *Douglas* declined to decide whether the accomplice properly invoked his Fifth Amendment privilege, it found sufficient that, on the record, he appeared to be acting entirely in his own interests. Indeed, the accomplice was planning to appeal his conviction, and his lawyer advised him to assert the privilege and not answer any questions. *Id.* at 420.

12

accomplice's confession did in *Douglas*, and any inferences from his failure to testify did not necessarily add "critical weight" to the prosecution's case.

Given the strictures imposed by the AEDPA standard of review, we cannot say that the New Jersey Supreme Court's decision was contrary to or an unreasonable application of *Douglas*. Indeed, until recently, Cagno himself did not seem to think that *Douglas* presented a clear analogy to his own case. He made no citation to *Douglas* in his Petition for Certification and supplemental briefing before the New Jersey Supreme Court, and it does not appear that he framed his argument before that court in a way that presented the *Douglas*-based argument he presses upon us now.

For these reasons, we conclude that the New Jersey Supreme Court's decision rejecting Cagno's confrontation claim was not contrary to, nor an unreasonable application of, clearly established federal law. Cagno is not entitled to habeas relief on this claim.

### B. Statute of Limitations Due Process Claim

Cagno argues that his due process rights were violated when the State failed to prove any acts in furtherance of the conspiracy within the statute of limitations period. The parties agree that in New Jersey, the statute of limitations, when raised, is an element of the offense and thus must be proven beyond a reasonable doubt pursuant to *In re Winship*, 397 U.S. 358 (1970).

As a preliminary matter, the State argues that Cagno is not entitled to federal habeas relief on this claim because it is a violation of state law, not federal law. But Cagno's claim is that the State failed to prove beyond a reasonable all the essential

13

elements of the state law, which is a federal constitutional requirement. While state courts may define the elements of a state offense, "the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law."[17] In *Jackson v. Virginia*, 443 U.S. 307 (1979), the Supreme Court explained this constitutional minimum standard as "whether after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[18]

Here, the New Jersey Supreme Court explained that, in determining whether the State proved the existence of the RICO conspiracy within the relevant time period, it had to consider "whether the totality of the evidence permitted a reasonable jury to find that the charged conspiracy continued into the limitations period."[19] The Court reasoned that the State was not obligated to present direct evidence of an overt act that took place within the limitations period, because there was other evidence that would permit the jury to conclude that the racketeering conspiracy was ongoing. For example, the State's expert witness in the field of organized crime explained the structure and activities of La Cosa Nostra, and how once an individual becomes a member, he is a member for life. Indeed, Rocco testified that at the time of Randazzo's murder, Lombardino had been a "made member" for almost forty years. Rocco also testified that, even at the time of the trial, he would be killed for breaking the code of silence if any member of La Cosa

---

[17] *Coleman v. Johnson*, 132 S. Ct. 2060, 2064 (2012) (citing *Jackson v. Virginia*, 443 U.S. 307, 324 n.16 (1979)).

[18] *Jackson*, 443 U.S. at 307.

[19] *Cagno*, 211 N.J. at 511 (alterations omitted) (internal quotation marks omitted).

14

Nostra found him. The Court also emphasized the fact that the conversation between Lombardino and Rocco in 1994 referred to meeting in the future to coordinate alibis. Notably, the Court did not rely on evidence of Lombardino's refusal to testify. We agree with the New Jersey Supreme Court that this evidence, "together with the other detailed evidence presented . . . [regarding] the hierarchical, structured nature of the New Jersey crew of the Colombo crime family and the extensive activities in which it engaged," was sufficient for a jury to find beyond a reasonable doubt that the racketeering conspiracy continued into the applicable limitations period.[20]

Moreover, in addition to the first layer of deference we owe to the trier of fact under *Jackson*, we owe a second layer of deference to the New Jersey Supreme Court under AEDPA.[21] That is, "a federal court may . . . overturn a state court decision rejecting a sufficiency of the evidence challenge . . . only if the state court decision was 'objectively unreasonable.'"[22] Applying this doubly deferential standard of review, we conclude that it was not objectively unreasonable for the New Jersey Supreme Court to determine that the totality of the evidence permitted the jury to infer that the conspiracy continued into the limitations period.

## C. Jury Instructions Due Process Claim

Finally, Cagno argues that the trial court's jury instructions created a mandatory presumption that the RICO conspiracy continued indefinitely once the State proved the existence of a conspiracy. This presumption, he contends, violated his due process rights

---

[20] *Id.* at 512.
[21] *Eley*, 712 F.3d at 853.
[22] *Cavazos v. Smith*, 132 S. Ct. 2, 4 (2011) (per curiam).

by improperly shifting onto him the burden of disproving the statute of limitations element, in violation of *Patterson v. New York*, 432 U.S. 197 (1977) and *Carella v. California*, 491 U.S. 263 (1989). Cagno takes particular issue with a portion of the instruction that quotes, in part, New Jersey's conspiracy statute.

There is an "'especially heavy' burden on a defendant who . . . seeks to show constitutional error from a jury instruction that quotes a state statute."[23] In such a situation, "the defendant must show both that the instruction was ambiguous and that there was a 'reasonable likelihood' that the jury applied the instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt."[24] "Even if there is some ambiguity, inconsistency, or deficiency in the instruction, such an error does not necessarily constitute a due process violation."[25] Cagno has not met this heavy burden.

The New Jersey Supreme Court acknowledged that under federal law, once the government establishes a RICO conspiracy, "it is entitled to a presumption that the conspiracy continued until the defendant demonstrates otherwise."[26] But here, the trial court charged the jury with finding beyond a reasonable doubt the elements of conspiracy *and* beyond a reasonable doubt that the conspiracy continued into the limitations period. Read as a whole, the jury instructions properly explained that the State had to prove the

---

[23] *Waddington v. Sarausad*, 555 U.S. 179, 190 (2009) (quoting *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977)).
[24] *Id.* at 190-91 (quoting *Estelle v. McGuire*, 502 U.S. 62, 72 (1991)).
[25] *Id.* at 190.
[26] *Cagno*, 211 N.J. at 510 (alterations omitted) (quoting *United States v. Yannotti*, 541 F.3d 112, 123 (2d Cir. 2008)).

statute of limitations element. The jury was repeatedly told that Cagno had no burden to prove anything. The New Jersey Supreme Court's conclusion that this burden always remained with the State, and was never improperly placed on Cagno to disprove, was not objectively unreasonable.

## III. CONCLUSION

For the reasons set forth above, we hold that Cagno is not entitled to federal habeas relief on any ground set forth in his habeas petition. We will therefore affirm the District Court's judgment to the extent it denies Cagno's habeas petition, and reverse the District Court's judgment to the extent it grants the petition.